NO. 07-10-00300-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 13, 2012

JACKIE LEE BIBBS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY;

NO. 1160104D; HONORABLE GEORGE W. GALLAGHER, JUDGE

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Jackie Lee Bibbs, was convicted of capital murder[1] and sentenced to life without parole.[2] Through six separate issues, appellant contends that the trial court committed reversible error. We disagree and will affirm.

Factual and Procedural Background

Appellant and the victim, Candalin Daniels, also known as Candy, were paramours and had been for several years. They had a child together in 2007.

---

[1] See TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2011).
[2] See id. § 12.31(a)(2) (West 2011).

However, by 2009, the relationship between the two had soured and Candy attempted to break off the relationship. Beginning in March of 2009, there were several incidents involving appellant breaking into Candy's home or being suspected of breaking into her home. Candy had reported such incidents to the Fort Worth Police Department on March 28, April 4, April 15, and May 5, 2009. Eventually, Candy sought a protective order on May 4, 2009. The *ex parte* protective order was signed May 5, and served on appellant that same day. The protective order provided for a hearing to be held on May 20.

In addition to seeking a protective order, Candy complained about appellant's harassment and other activities to his parole officer. After discussing Candy's complaints with his supervisor, on May 5, appellant's parole officer had Candy come back to prepare a sworn statement regarding her interaction with appellant. Subsequently, on May 12, appellant's parole officer advised appellant that the terms and conditions of his parole had been amended to prohibit him from having further contact with Candy.

On May 15, Candy was hosting a fish fry for family and friends at her home. Early in the evening, appellant's nephew, Andrew Bibbs, came to Candy's home and an argument ensued. Andrew was asked to leave the residence and he complied. After that, Candy's sister, Mary Ann Daniels, left the party. As Mary Ann was driving by the Sunny Food Store, which is located down the street on the corner from Candy's home, she noticed appellant's white pick-up at the store. She then called Candy to alert her.

Candy decided to take her brother-in-law, Tyrone,[3] to the store to ask appellant to quit harassing her. Eventually, a number of the guests at the party left the house and proceeded down the block toward the store. Candy and Tyrone were in front of the others by some 15 feet or so. As they were walking toward the store, appellant jumped over the fence at the corner of Candy's house with a gun in his hand. Michelle Brown and Lora Hammons both saw appellant and simultaneously yelled at Candy that appellant was coming from behind her with the gun. Candy fled toward the store with appellant running behind her firing a gun. Candy made it to the interior of the store but could not elude appellant. Candy was shot and died from these wounds. The medical examiner testified that Candy was shot at least four times. The store's surveillance camera recorded the shooting, both on an exterior camera and an interior camera. These DVDs were played for the jury.

As appellant exited the store, he encountered Kiera Daniels, Candy's juvenile daughter, and threatened to shoot her if she did not quit screaming. Appellant then returned to Candy's house and confronted Candy's 11-year-old son, Craig. He proceeded to hit Craig with the gun. Mary Ann had returned to the house and tried to pull appellant off of Craig. Appellant then proceeded to strike Mary Ann with the gun. Mary Ann testified that she thought appellant was looking for his son, Cordarian, and intended to harm the child. She told appellant that Cordarian was not at the house and appellant then left. Appellant was eventually arrested for the murder of Candy.

---

[3] Tyrone's last name was not testified to at trial.

Appellant was indicted for capital murder, specifically murder in the course of committing retaliation. However, the State elected not to seek the death penalty. After hearing the evidence, appellant was convicted of capital murder, and mandatorily sentenced to life in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).

Appellant appeals his conviction by six issues. The first issue deals with the trial court's overruling of appellant's motion to suppress the evidence of the protective order. Issues two and three deal with the trial court's overruling of appellant's objections to the introduction of State's exhibit number 2. Issue four challenges the sufficiency of the evidence. Issues five and six concern the trial court's overruling of two Texas Rule of Evidence 403 objections made by appellant. Finding no reversible error, we will affirm.

Motion to Suppress

## Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. Under this standard, we give almost total deference to a trial court's determination of historical facts, but review *de novo* the trial court's application of the law to those facts. Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). When, as in this case, the trial court's ruling is an application of the law to undisputed facts that do not turn on a question of credibility, our review is *de novo*. See Wilson v. State, 311 S.W.3d 452, 458 (Tex.Crim.App. 2010).

<u>Analysis</u>

Appellant's first issue contends that when the trial court overruled the motion to suppress it committed reversible error because the jury was then allowed to hear testimony about a possible reason for retaliation that the grand jury did not hear. The indictment in question alleged murder committed in the course of committing retaliation. <u>See</u> TEX. PENAL CODE ANN. § 19.03(a)(2).[4] The act of retaliation at issue in the motion to suppress was on account of Candy seeking a protective order. According to appellant's theory, this violated appellant's due process right pursuant to the 5th and 14th amendments to the United States Constitution. <u>See</u> U.S. CONST. amends. V, XIV.

A hearing was held on the motion to suppress on June 11, 2010. At that hearing, appellant's trial counsel admitted that the State was proceeding on a constitutionally valid indictment. Further, trial counsel admitted that appellant had notice of the protective order and that appellant was not claiming a notice issue for the purposes of preparing a defense. Appellant simply claims that proceeding with evidence not heard by the grand jury violates the due process requirements of the aforementioned 5th and 14th amendments to the U.S. Constitution.

The United States Supreme Court early on ruled that a defendant in state court has no 5th Amendment right to a grand jury indictment. <u>See</u> <u>Hurtado v. California</u>, 110 U.S. 516, 538, 4 S.Ct. 111, 28 L.Ed. 232 (1884). This has consistently been the ruling by the Supreme Court. <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 476 n.3, 120 S.Ct.

---

[4] Further reference to the Texas Penal Code will be by reference to "§ ___" or "section ___."

5

2348, 147 L.Ed.2d 435 (2000); Branzburg v. Hayes, 408 U.S. 665, 688 n.25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). As such, we conclude that the trial court did not err in applying the law applicable to appellant's motion to suppress. Since appellant has made no other claims regarding the failure of the State to present this evidence to the grand jury, his first issue is overruled.[5]

## State's Exhibit No. 2

Appellant's second and third issues deal with the trial court's rulings regarding the admissibility of State's Exhibit 2 (S-2). S-2 is the written statement that Candy made to appellant's parole officer on May 5, 2009. Appellant's second issue contends that the admission of this exhibit violated appellant's right of confrontation under the 6th amendment to the United States Constitution. See U.S. CONST. amend. VI; Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Appellant's third issue contends that the exhibit was hearsay and not admissible evidence. We will address these issues together.

## Standard of Review

When addressing issues relating to the trial court's admission of evidence, the abuse of discretion standard applies. See Billodeau v. State, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of

---

[5] Although appellant's brief includes a reference to Article I, Section 10, of the Texas Constitution, his sole request for relief is based upon the perceived violation of the due process requirements of the 5th and 14th amendments to the United States Constitution.

6

reasonable disagreement.  Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996).

Additionally, an appellate court will review the trial court's ruling in light of what was

before the trial court at the time the ruling was made.  Weatherred v. State, 15 S.W.3d

540, 542 (Tex.Crim.App. 2000).  In the absence of findings of fact and conclusions of

law, the trial judge's decision will be sustained if it is correct on any theory of law

applicable to the case.  See State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App.

2000).

Analysis of Confrontation Claim

The State's response to appellant's initial complaint that the admission of S-2

violated the right of confrontation is to suggest that the exhibit was not hearsay, which is

a requirement for a confrontation violation under Crawford.  See 541 U.S. at 59 n.9

(citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)).

This is because, according to the State, the exhibit was not offered for the truth of the

matters asserted, but only to show that Candy made the report to appellant's parole

officer.  However, the record before us belies this contention because, when the State

offered S-2, the trial attorney for the State informed the trial court, "Your Honor, we'd

offer State's Exhibit Number 2 for all purposes."  Subsequently, the trial court admitted

the exhibit over appellant's objection without any limiting instruction being given to the

jury.  Neither did the trial court give any limiting instruction in the court's charge on the

use of S-2.  Under these facts, we would be hard pressed to say that Candy's affidavit

was not testimonial hearsay.

Next, the State contends that appellant waived his rights under the confrontation clause argument by engaging in conduct that is designed to prevent the witness, Candy, from testifying.  See Giles v. California, 554 U.S. 353, 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).  However, a closer reading of the Giles opinion leads to the conclusion that the U.S. Supreme Court does not see the forfeiture by wrongdoing theory as waiving a criminal defendant's rights under the confrontation clause unless the defendant engaged in this wrongful conduct specifically for the purpose of preventing the witness from testifying.  See id. at 367-368.  This was also the holding of our sister court, the Fort Worth Court of Appeals, in Davis v. State.  See 268 S.W.3d 683, 706 (Tex.App.— Fort Worth 2008, pet. ref'd).

The evidence regarding appellant's motives for shooting Candy include a theory that he did so to keep her from testifying before an administrative panel convened to possibly revoke appellant's parole.  However, the evidence was also presented that the trouble between appellant and Candy was just as likely tied to appellant's obsession with Candy after she decided to terminate their relationship.  Accordingly, we do not find the application of the forfeiture of appellant's rights to confrontation because of his conduct to be applicable in this case.

As a result of our decision regarding the application of the forfeiture by conduct theory, we are left with an out-of-court statement that is testimonial in nature.  This statement has been offered for the truth of the matters asserted therein, and appellant has not had the opportunity to confront the testifying party.  These are the elements of a

8

Crawford objection. See Crawford, 541 U.S. at 61. Accordingly, we find that the trial court committed error when it admitted S-2 over appellant's confrontation objection.

Harm Analysis

Inasmuch as we have determined the trial court erred in admitting the exhibit over a constitutional confrontation objection, we now apply TEX. R. APP. P. 44.2(a) to determine whether the error is harmless. TEX. R. APP. P. 44.2(a).[6] A violation of the confrontation clause is subject to a harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In making a harmless error determination, we are to ascertain if the verdict or punishment would have been the same absent the error. See Clay v. State, 240 S.W.3d 895, 904 (Tex.Crim.App. 2007). In conducting our review, we review the entire record. Id. According to Clay, among the things we must consider are: 1) the importance of the hearsay evidence to the State's case; 2) whether the hearsay evidence was cumulative of other evidence; 3) the presence or absence of other evidence corroborating or contradicting the hearsay evidence on material points; and 4) the overall strength of the State's case. Id. (citing Davis v. State, 203 S.W.3d 845, 852 (Tex.Crim.App. 2006)).

The record before the Court reveals that the jury heard from appellant's parole officer, Marcus Cooper, who testified that he was aware of the relationship between

---

[6] TEX. R. APP. P. 44.2(a) provides:

(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse the judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

appellant and Candy. Further, Cooper testified that he was aware that there had been conflict between the two of them. Cooper had gone so far as to advise appellant that the terms and conditions of his parole had been modified to specifically require appellant to refrain from having contact with Candy. The evidence in S-2 was duplicative and cumulative of some of Cooper's testimony and the testimony presented by other members of law enforcement. From a review of the record, S-2 was not critical to the State's theory or proof. The theory involved murder committed in retaliation for Candy being a possible witness against appellant, either at a parole revocation hearing, criminal trial, or family law protective order hearing. Finally, it must be remembered that, through the introduction of State's Exhibit Three (S-3), the jury was able to actually watch appellant chase Candy down and shoot her multiple times. The State's proof was significant. Based upon our review of the evidence, we can say beyond a reasonable doubt that the verdict in this case would not have changed if S-2 had not been admitted into evidence. See Clay, 240 S.W.3d at 904. Further, inasmuch as this was a non-death penalty capital case, the verdict of guilty meant an automatic sentence of life in the ID-TDCJ. See § 12.31(a)(2). Therefore, the wrongful admission of S-2, beyond a reasonable doubt, would not have altered the sentence. See Clay, 240 S.W.3d at 904. Accordingly, we find the introduction of S-2 was harmless. Appellant's second issue is overruled.

Analysis of Hearsay Claim

Again the State initially contends that S-2 was not hearsay. We refer the parties to our decision regarding the offer of the exhibit as set forth in the previous paragraph.

If the document is hearsay, as determined above, then we must proceed to ascertain if error in admitting the exhibit was harmless. For this determination, we apply the provisions of TEX. R. APP. P. 44.2(b). See TEX. R. APP. P. 44.2(b);[7] see Armstead v. State, 977 S.W.2d 791, 796 (Tex.App.—Fort Worth 1998, pet. ref'd) (admission of otherwise inadmissible hearsay is not constitutional error). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. Coble v. State, 330 S.W.3d 253, 280 (Tex.Crim.App. 2010), cert. denied, 131 S.Ct. 3030, 180 L.Ed.2d 846, 2011 U.S. LEXIS 4622 (2011). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. Id. In making this harm determination, we examine the entire record and calculate the probable impact of the error upon the rest of the evidence. Id.

Our review of the record recited in the analysis of harm pursuant to constitutional error under Texas Rule of Appellate Procedure 44.2(a) is equally applicable to the analysis of harm under Texas Rule of Appellate Procedure 44.2(b). As such, we remain convinced that the admission of S-2 was cumulative of other evidence admitted before the jury and that the evidence against appellant was overwhelming. The admission of S-2 had no or only a slight effect in the jury's determination and, therefore, did not have a substantial and injurious effect on the jury's verdict. See Coble, 330 S.W.3d at 280. Appellant's third issue is overruled.

---

[7] TEX. R. APP. P. 44.2(b) provides:

(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must by disregarded.

Sufficiency of the Evidence

<u>Standard of Review</u>

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>Brooks v. State</u>, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." <u>Brooks</u>, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by <u>Jackson</u>." <u>Id.</u> (Cochran, J., concurring). When reviewing all of the evidence under the <u>Jackson</u> standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. <u>See</u> <u>id.</u> at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in <u>Watson v. State</u>, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." <u>Id.</u> at 899.

The sufficiency standard set forth in <u>Jackson</u> is measured against a hypothetically correct jury charge. <u>See</u> <u>Malik v. State</u>, 953 S.W.2d 234, 240

(Tex.Crim.App. 1997).   Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  Id.  The "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument."  Curry v. State, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

Applicable Law

Appellant was indicted and tried for the offense of capital murder.  See § 19.03(a)(2).  Specifically, murder committed in the course of committing retaliation.  The elements of the indictment against appellant are:

1)  Jackie Lee Bibbs

2)  in Tarrant County, Texas

3)  on or about the 15th day of May 2009

4)  intentionally caused the death of Candalin Daniels

5)  by shooting her with a deadly weapon, to-wit: a firearm

6)  [appellant] committed the murder while in the course of committing

7)  retaliation against Candalin Daniels.

The offense of retaliation is codified in section 36.06 and consists of the following elements:

1)  Intentionally or knowingly

2)  harms or threatens to harm

13

3) another by an unlawful act

4) in retaliation for or on account of service or status of another as

5) a witness or prospective witness.

See § 36.06(a) (West 2011).

Analysis

Appellant contends that the evidence is insufficient to establish that appellant killed Candy because she tried to have a restraining order issued against appellant. However, such a position is not indicative of all the evidence against appellant, and is not representative of what the indictment and the court's charge required the State to prove.

The record reflects that Cooper testified, without objection, that he had met Candy first on April 14, 2009. Through that meeting, he determined that Candy and appellant had been in a romantic relationship that was "going south." Cooper had knowledge that Candy alleged that appellant had broken into her home in March 2009, and destroyed quite a bit of her clothing by pouring bleach on them. Further, Cooper was aware of an ongoing dispute between Candy and appellant regarding their child, Cordarian. After discussing this matter with appellant following Candy's visit of April 14, Cooper advised appellant to take the issue of custody up through proper legal channels and warned appellant that any attempt at self-help could result in an administrative warrant being issued to revoke his parole. As a result of Cooper's contacts with Candy, appellant was instructed to have no contact with her.

14

Cooper saw Candy again on May 5, 2009. At this time, Candy advised Cooper that appellant had threatened her. Following his conversation with Candy, Cooper spoke to his supervisor about the situation. The supervisor advised Cooper to have Candy come back to the office and make a sworn statement. Candy returned and prepared a sworn statement. As a result of Candy's statement, appellant's terms of parole were modified to prohibit appellant from having any contact with Candy. Appellant was notified of this modification at a meeting with Cooper on May 12. Cooper testified that he personally went over this modification with appellant on that date. Additionally, at the May 12 meeting, appellant informed Cooper that he had been served with a protective order and was due in court for a hearing on the protective order on May 20. As a result of the information Candy provided to Cooper, Cooper testified that Candy was a potential witness against appellant at a parole revocation hearing.

In addition to Cooper's testimony, Judith Wells, presiding judge of the 325th Family District Court in Tarrant County, testified about the issuance of an *ex parte* protective order against appellant. Candy filed a sworn application for the protective order on May 4, 2009. This was admitted as State's Exhibit 38 (S-38). The application alleged acts of family violence committed by appellant against Candy. After reviewing the application, Judge Wells signed the *ex parte* protective order that same day. This exhibit was admitted before the jury as State's Exhibit 39 (S-39). S-39 contains an order setting a hearing on the protective order for May 20. The *ex parte* protective order was served on appellant on May 5, according to the return of service admitted into evidence as State's Exhibit 40 (S-40) and the testimony of Deputy Constable for Precinct 5 of Tarrant County, Lizeth Bukowski. Bukowski identified appellant as the

15

person she served the *ex parte* protective order on. According to Judge Wells's testimony, Candy had reported a crime, family violence, against appellant, and was to have been a witness against appellant in that hearing scheduled for May 20.

Additionally, in the weeks prior to her murder, Candy reported three separate incidents involving appellant to the Fort Worth Police Department. On March 28, 2009, Officer Jeffrey Cunningham was dispatched to Candy's home in reference to a burglary allegation. Upon arrival at Candy's home, Cunningham observed a bedroom window that had been broken out. Cunningham also observed that Candy's clothes had bleach poured on them. While Cunningham was on the scene, Candy received a phone call from appellant. Cunningham testified that the person identified as appellant admitted to bleaching the clothing because he was mad at Candy. Cunningham further testified that he was preparing to file criminal mischief charges against appellant until Candy stated she did not want to testify against appellant and send him back to prison. As a result of Candy's unwillingness to testify, no charges were filed.

On April 15, 2009, Officer James Thomas responded to a domestic disturbance call at Candy's residence. Thomas testified that the nature of the disturbance was threatening phone calls that, according to the reporting party, Candy, originated from appellant. After receiving the information, Thomas gave Candy the family-violence packet to seek a protective order.

On May 5, 2009, Officer Johnny Gonzalez responded to a prowler call at Candy's residence. According to the information provided to Gonzalez, Candy had received a phone call from her daughter, Kiera, stating that appellant was attempting to break into

16

the house. Gonzalez checked the perimeter of Candy's home and found that one window had been broken. Gonzalez obtained the name of appellant as the perpetrator and prepared a report alleging criminal mischief as the crime. Because of Candy's death ten days after the offense, no charges were filed. However, Candy was the person who reported the crime and could have been called to testify against appellant.

When a review of all of the evidence has been conducted, it becomes apparent that the State produced testimony and exhibits of at least five separate events where Candy was a potential witness against appellant: the possible parole revocation based upon Cooper's testimony; the protective order hearing based upon the testimony of Judge Wells and Bukowski; and the three separate incidents of alleged criminal activity investigated by the Fort Worth Police Department. In considering all of this evidence in the light most favorable to the verdict, as we must, a jury could rationally decide beyond a reasonable doubt that appellant killed Candy in retaliation for her status as a prospective witness. See §§ 19.03(a)(2); 36.06(a), Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 912. Accordingly, appellant's fourth issue is overruled.

## Photographs

In issues five and six, appellant contends that the trial court's admission of two photographs, State's Exhibit 25 (S-25) and State's Exhibit 26 (S-26), over appellant's Texas Rule of Evidence 403[8] objection was an abuse of discretion. Appellant simply states that the photos at issue did nothing but inflame the minds of the jury. Further, it

---

[8] Further reference to the Texas Rules of Evidence will be by reference to "Rule __" or "rule __."

is appellant's contention that the trial court erred because it did not conduct a balancing test as required by rule 403.

Standard of Review

As appellant's issues relate to the trial court's admission of evidence, we review the decisions under the abuse of discretion standard.  See Billodeau, 277 S.W.3d at 39.  The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).  A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement.  Green, 934 S.W.2d at 102.

Applicable Rules of Evidence and Law

Rule 401 states that relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Rule 401.  Pursuant to rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Rule 403.

Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial.  See Malone v. State, No. 02-10-00436-CR, 2011 Tex. App. LEXIS 8602, at *10 (Tex.App.—Fort Worth Oct. 27, 2011, no pet.) (mem. op., not designated for publication) (citing Shuffield v. State, 189 S.W.3d

18

782, 787 (Tex.Crim.App. 2006)). In considering photographs, the court considers the number of photographs, the size, whether it is in color or black and white, the detail shown in the photograph, whether the photograph is gruesome, whether the body is naked or clothed, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to appellant's disadvantage. Shuffield, 189 S.W.3d at 787. These considerations are part of the rule 403 analysis in determining: 1) how probative the evidence is; 2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; 3) the time the proponent needs to develop the evidence; and 4) the proponent's need for the evidence. See Montgomery, 810 S.W.2d at 389-90 (op. on reh'g).

Analysis of S-26

Appellant's issue five is directed to the admission of S-26, one of the autopsy photographs introduced at trial. S-26 is a color photo of Candy taken at the autopsy. It depicts a side shot of Candy from the neck up. The medical examiner, Dr. Gary L. Sisler, testified that a unique number was assigned to this autopsy, No. 0905848. The photo at issue shows a placard placed beside the body bearing this unique autopsy number. Dr. Sisler was able to identify the body as that of Candy from the unique number. The photo is not gruesome and the State needed to identify the person in the photo as that of the decedent, Candy. Dr. Sisler identified Candy from this photo and a previously admitted photograph of Candy while alive, State's Exhibit 1. During Dr. Sisler's testimony, a number of other autopsy photographs were admitted without objection. The probative value of this photo was not substantially outweighed by the

19

danger of unfair prejudice.  See Young v. State, 283 S.W.3d 854, 875 (Tex.Crim.App. 2009).

Analysis of S-25

S-25 is a photo of Candy taken at the crime scene after she had been shot by appellant.  Witnesses identified the picture as that of Candy.  The photo simply shows her on the floor of the convenience store after having been shot.  It is not gruesome and shows no indication that the body had been posed or otherwise disturbed.  Further, the jury saw a video that showed the entire episode without objection.  This picture simply depicts the result of a violent assault by one person, appellant, on another person, Candy.  See Sonnier v. State, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995) (such a photo depicts nothing more than the reality of a brutal crime scene and a trial court does not err when admitting such a photo).  The probative value of this photo was not substantially outweighed by danger of unfair prejudice.  See Young, 283 S.W.3d at 875.

Trial Court's Failure to State Balancing Test on the Record

Appellant also contends that the failure of the trial court to state on the record that it had performed the balancing test required under a rule 403 analysis is error.  However, a trial court is not required to *sua sponte* place any findings it makes or conclusions it draws when engaging in this test into the record.  See Jones v. State, No. 02-10-00035-CR, 2011 Tex. App. LEXIS 8207, at *12-13 (Tex.App.—Fort Worth Oct. 13, 2011, no pet.) (mem. op., not designated for publication) (citing Williams v. State, 958 S.W.2d 186, 195 (Tex.Crim.App. 1997)).  The record reveals there was no request of the trial judge to state his findings regarding the rule 403 balancing test.  The trial

judge is presumed to engage in the required balancing test once rule 403 is invoked, and the trial court's failure to conduct the balancing test on the record does not imply otherwise.  See id. at *13.

For the reasons reflected above, appellant's issues number five and six are overruled.

## Conclusion

Having found no reversible error in the record regarding admission of S-2 and having overruled all of appellant's other issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Publish.