

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00395-CR

Rigo **GUERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 11-09-00042-CRL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:   Sandee Bryan Marion, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 29, 2014

AFFIRMED

A jury convicted appellant Rigo Guerra of capital murder.  The State did not seek the death penalty, so the trial court sentenced Guerra to life imprisonment.  On appeal, Guerra raises three points of error, contending: (1) the trial court erred in admitting into evidence an autopsy photograph, as well as testimony relating to an extraneous aggravated robbery, because the admissions violated Rule 403 of the Texas Rules of Evidence; and (2) the trial court erred in denying his request for a mistrial during the State's closing argument.  We affirm the trial court's judgment.

Guerra and two friends, Marcus Serna and Destyn Frederick, decided to commit a burglary. According to Serna, Guerra said they needed a gun so they went to Frederick's house and took his mother's shotgun. Frederick gave the gun to Guerra. Because the shotgun was not loaded, the trio went to Serna's house for shells. Serna claimed the gun was for protection and to "scare" anyone they might come upon during the burglary. Eventually, they went to the Casas home where Guerra kicked in one of the doors to the house. He entered, followed by Serna.

Israel and Guadalupe Casas, who had been married for sixty-three years, were sleeping in their Cotulla, Texas home when they heard "bumping." According to Mrs. Casas, someone was "striking the door." Mr. Casas called out, "Who's there?" Mr. Casas got out of bed, attempting to close the bedroom door. It is undisputed Guerra shot Mr. Casas with a shotgun, the blast and wood splinters from the door striking Mr. Casas in the side of the face. Mr. Casas fell to the floor; Mrs. Casas was screaming at the intruders to take what they wanted and leave. Mrs. Casas heard a second shot; Guerra shot her in the arm. After shooting the couple, Guerra and Serna ran from the home. Serna told Guerra he could not believe Guerra shot the couple. Guerra responded, "Because I'm a gangster, Marcus. This is what I do."

Mrs. Casas called 911 because her husband was unable to speak due to the severity of his injury. Eventually, help arrived and Mr. and Mrs. Casas were taken to the hospital. Mr. Casas ultimately died from his injuries; Mrs. Casas lost her arm.

After the events at the Casas home, Guerra and his friends rode around in Frederick's truck, still in possession of the shotgun. After smoking synthetic marijuana, Guerra decided to rob a Valero convenience store. Serna testified Guerra jumped out of the truck with the shotgun, telling Frederick to pick him up behind an apartment complex. However, instead of going to the complex to meet Guerra, Serna and Frederick went to Serna's home.

The cashier at the convenience store testified someone wearing a ski mask walked in through the back door and demanded all the money in the register. The person in the ski mask was later determined to be Guerra. Guerra was holding the shotgun. He took the money from the register and well as other items and left the store.

Eventually, Guerra and his friends were arrested. Guerra was charged with capital murder. After a trial, the jury found Guerra guilty, and as the State did not seek the death penalty, the trial court sentenced Guerra to life in prison. Guerra then perfected this appeal.

## ANALYSIS

On appeal, Guerra raises three points of error. His first complaint relates to the admission of an autopsy photograph, the second concerns the admission of evidence relating to the Valero robbery, and the third relates to the denial of a motion for mistrial relating to a portion of the State's closing argument.

### Admission of Evidence — The Autopsy Photograph

Guerra first complains the trial court should not have admitted State's Exhibit 142, an autopsy photograph of Mr. Casas, because its probative value was outweighed by the potential for undue prejudice. *See* TEX. R. EVID. 403. He argues the State could have sufficiently demonstrated the injuries suffered by Mr. Casas through State's Exhibit 141, which was admitted without objection, and therefore, the State introduced Exhibit 142 merely to inflame the jury.

### Standard of Review

We review a trial court's decision to admit photographs under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). Thus, we must determine if the trial court's ruling was outside the zone of reasonable disagreement. *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App.

2007); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). There should be a reluctance on the part of an appellate court to reverse a trial court's decision on the admission or exclusion of evidence. *Montgomery*, 810 S.W.2d at 378.

*Applicable Law*

"Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible." *Gallo*, 239 S.W.3d at 762. "In other words, if verbal testimony is relevant, photographs of the same are also relevant." *Id.* Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (quoting TEX. R. EVID. 401). Photographs of the injuries inflicted on the victim are relevant to a jury's determination. *Gallo*, 239 S.W.3d at 762. That relevance is not diminished merely because the jury also heard testimony about the same injuries. *Id.*

Rule 403 of the Texas Rules of Evidence favors the admission of relevant evidence, and carries a presumption that relevant evidence will be more probative than prejudicial. *Aragon v. State*, 229 S.W.3d 716, 724 (Tex. App.—San Antonio 2007, no pet.) (citing *Jones v. State*, 944 S.W.2d 642, 652–53 (Tex. Crim. App. 1996); *Legate v. State*, 52 S.W.3d 797, 807 (Tex. App.—San Antonio 2001, pet. ref'd)). However, Rule 403 allows for the exclusion of otherwise relevant evidence when the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). "Evidence is unfairly prejudicial when it has 'an undue tendency to suggest that a decision be made on an improper basis.'" *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000) (quoting Montgomery, 810 S.W.2d at 389). In determining whether the probative value of photographs is substantially outweighed by the danger

of unfair prejudice, a court may consider several factors, including: "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, and whether the body depicted is naked or clothed." *Gallo*, 239 S.W.3d at 762. A court must also consider "[t]he availability of other means of proof and the circumstances unique to each individual case." *Id.* These considerations are part of the Rule 403 analysis, allowing the court to determine: (1) how probative the evidence is; (2) the potential for the evidence to affect the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006); *Bibbs v. State*, 371 S.W.3d 564, 575 (Tex. App.—Amarillo 2012, pet. ref'd), *cert. denied,* 133 S.Ct. 1591 (2013). The court of criminal appeals recently restated these factors in *Gigliobianco* — restating the four factors as six — but the restatement does not appear to be substantive in nature.[1] *See Newton v. State*, 301 S.W.3d 315, 319 n. 3 (Tex. App.—Waco 2009, pet. ref'd).

When pictorial evidence helps a jury to understand verbal testimony, such as technical language used by an expert or medical doctor describing injuries that a victim sustained during a crime, the photograph is generally admissible. *Harris v. State*, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983) (en banc). A "[p]hotograph must be relevant, thus, it must be *helpful* to the jury." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). Like any other demonstrative evidence, photographs should assist the jury in making a decision, whether that is deciding guilt or punishment. *Id.*

---

[1] The court stated that under a Rule 403 analysis, the reviewing court must balance: (1) the probative force of the evidence; (2) the proponent's need for the evidence; (3) any tendency of the evidence to suggest a decision on an improper basis; (4) any tendency of the evidence to confuse or distract the jury from the main issue; (5) any tendency of the evidence to be given undue weight by a jury that is not equipped to evaluate the value of the evidence; and (6) the likelihood the evidence will consume an inordinate amount of time or repeat evidence previously admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

Autopsy photographs are generally admissible unless they depict some mutilation caused by the autopsy itself. *Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003). However, if the troubling nature of the photographs is due primarily to the injuries caused by the defendant, then the changes to the body caused by the autopsy are only of minor significance. *See Hayes v. State*, 85 S.W.3d 809, 816 (Tex. Crim. App. 2002) (citing *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997)).

*Application*

Prior to the testimony of the medical examiner, the parties discussed the admissibility of certain photographs with the trial court. Guerra had no objection to State's Exhibit 141, a side-view autopsy photograph showing the facial wounds suffered by Mr. Casas as a result of the shotgun blast. However, Guerra objected to State's Exhibit 142, a close up of the same wounds shown in Exhibit 141. Guerra objected to this exhibit because in the photograph an autopsy technician's fingers are shown spreading the facial wound to show the depth of the wound. Guerra claimed the medical examiner could adequately "describe the wound" using Exhibit 141, and the admission of Exhibit 142 would merely inflame the jury. The State responded that Exhibit 141 was a photograph merely showing the "superficial part of the wound" and Exhibit 142 demonstrated the internal damage inflicted below the skin, which cannot be seen in Exhibit 141. The medical examiner was moving the skin to allow a view of the interior damage. After considering the arguments, the trial court overruled Guerra's objection.

When the medical examiner testified, the State asked her to identify State's Exhibit 142. The medical examiner stated it was a photograph of Mr. Casas's face before it was cleaned, "showing the inside of the wound margins, the destruction from the wood." The medical examiner stated the autopsy technician spread the wound apart to show "how deep the destruction went

- 6 -

inside the tissue, inside the soft tissue and the muscle at the side of the face," something that could not be seen in the "distant photograph" admitted as State's Exhibit 141.

State's Exhibit 142 was the only photograph admitted depicting the interior damage to the face caused by the shotgun blast. *See Gallo*, 239 S.W.3d at 762. The photograph is the same size as the other two autopsy photographs of Mr. Casas's face, which were not objected to by Guerra, and all of the photographs were in color. *See id.* Although Exhibit 142 is a close-up of the wound, the medical examiner specifically used it to show the jury the extensive damage caused to Mr. Casas's face, as described in her verbal testimony. *See id.* Other than the medical examiner's verbal description, State's Exhibit 142 was the only way to show the jury the true extent of the injuries caused by Guerra's actions. *See id.* Photographs of the injuries inflicted are relevant, and that relevance is not lessened merely because the medical examiner also testified about the injuries. *See id.*

As set forth above, autopsy photographs are generally admissible unless they depict some mutilation caused by the autopsy itself. *Rayford*, 125 S.W.3d at 529. The medical examiner testified the photograph showed the wound margins and the depth of the destruction caused by the shotgun blast to Mr. Casas's face. The mutilation depicted was not caused by the autopsy itself. And as to the technician's pulling back of the skin to show the interior of the wound, the Texas Court of Criminal Appeals has expressly held that changes to the body rendered as part of the autopsy process does not make an autopsy photograph more gruesome. *Santellan*, 939 S.W.2d at 173. Accordingly, we hold State's Exhibit 142 was probative, showing the extent of the wounds suffered by Mr. Casas and the only photograph to really do so. *See Shuffield*, 189 S.W.3d at 787. Although Exhibit 142 may have disturbed the jury, we do not find it would have done so in an irrational way under the circumstances. *See id.* Moreover, the State did not spend an inordinate time on the photograph in question, and the State surely needed the evidence to enable the jury to

fully understand the medical examiner's testimony concerning the extent of Mr. Casas's injuries. *See id.*; *see also Harris*, 661 S.W.2d at 107 (holding photograph generally admissible if helps jury understand verbal testimony, i.e., language used by expert to describe injuries sustained by victim).

As the court of criminal appeals has held, photographs are not inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidentally tend to arouse passion or prejudice. *Erazo*, 144 S.W.3d at 490. And as this court has held, when a photograph shows the nature, location, and extent of a wound, its probative value outweighs any prejudicial effect. *Legate*, 52 S.W.3d at 807. Accordingly, we hold the trial court's decision to admit State's Exhibit's 142 was not outside the zone of reasonable disagreement and overrule Guerra's first point of error. *See McGee*, 233 S.W.3d at 318.

### Admission of Evidence — The Valero Robbery

Guerra's next complaint also invokes Rule 403 of the Texas Rules of Evidence. In his second point of error, he contends the trial court's decision to admit evidence relating to the Valero robbery, which occurred after the events at the Casas home, violated Rule 403. In other words, he contends the evidence showing his involvement in the aggravated robbery was more prejudicial than probative. Notably, Guerra does not challenge the admission of facts relating to the Valero robbery under Rule 404(b), which governs the admissibility of extraneous offense evidence. *See* TEX. R. EVID. 404(b) (stating evidence of other crimes, wrongs or acts are not admissible to prove character of person to show action in conformity therewith, but may be admissible for other purposes).

### Standard of Review

An appellate court reviews a trial court's decision to admit extraneous offense evidence over a Rule 403 objection under the abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the court's ruling is within the "zone of reasonable

disagreement," there is no abuse and the ruling must be upheld. *Id.* at 343–44 (quoting *Montgomery*, 810 S.W.2d at 391). If the trial court's ruling is correct on any legal theory, it will be upheld. *De La Paz*, 279 S.W.3d at 344.

### *Applicable Law*

As set out in our analysis of the previous point of error, Rule 403 favors the admission of relevant evidence. *Aragon*, 229 S.W.3d at 724. Moreover, the rule presumes relevant evidence is more probative than prejudicial. *Id.* Relevant evidence tends to make facts that are significant to a determination of guilt more or less likely than they would be if the evidence did not exist. *Gallo*, 239 S.W.3d at 762; TEX. R. EVID. 401. Nevertheless, even relevant evidence must be excluded under Rule 403 if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *see Gigliobianco*, 210 S.W.3d at 641–42. Evidence is inadmissible under Rule 403 when it suggests that the fact finder make a decision on an improper basis. *Reese*, 33 S.W.3d at 240.

In determining a Rule 403 issue, we must consider the probative value of the evidence, its potential to improperly affect the jury, the time the State uses to develop the evidence, and the State's need for the evidence. *Shuffield*, 189 S.W.3d at 787; *see Gigliobianco*, 210 S.W.3d at 641– 42. With these factors in mind, we begin our analysis.

### *Application*

The State first raised evidence of the Valero robbery through Deputy Homer Olivarez. When Guerra objected, based on Rule 403, the State argued the evidence was admissible because the crimes, and the investigation of each, were intertwined. More specifically, the State pointed out that when separate investigators began looking into each crime — the Valero robbery and the robbery at the Casas home — and sharing information, they began to realize they were dealing

with the same perpetrators in the same approximate time frame. According to the State, evidence relevant to the Valero robbery, e.g., the gun and Guerra, related back to the events at the Casas home. As the prosecutor stated with regard to Deputy Olivarez's actions that night, "he started out chasing the robbery suspects and then realized and starting collecting evidence for the murder." Thus, according to the State, the evidence was relevant, probative, and not overly prejudicial in that it set out the circumstances of the investigation and the context of the entire criminal episode involving Guerra and his friends.

After the trial court overruled Guerra's initial Rule 403 objection, Deputy Olivarez made two references to the Valero robbery, stating, in essence, he was initially called out to investigate a robbery at the Valero station. The State ultimately went on, after further Rule 403 objections from Guerra, to introduce additional evidence relating to the Valero robbery. The evidence consisted of: (1) Guerra's three-page statement, which was read into the record and admitted as an exhibit, in which Guerra twice stated he and his companions decided to rob the Valero store after the murder at the Casas home; (2) the Valero clerk's testimony about the robbery, which comprised approximately fourteen pages — including direct, cross, and argument to the court regarding Guerra's objection; and (3) testimony from Serna, which comprised a few lines on five separate pages of the record, in which he stated Guerra alone decided to rob the Valero store and jumped out of the truck.

We begin by holding the trial court could have reasonably determined that evidence of the Valero robbery was probative. It established the continuing nature of the criminal episode that began with the events at the Casas home and further established a link between the perpetrators. The Valero robbery was neither remote in time nor place. Most importantly, evidence of the Valero robbery ultimately placed the murder weapon, the shotgun, in Guerra's hands, implicitly negating Guerra's defense that although he was at the Casas home, Frederick used the shotgun to

- 10 -

shoot Mr. and Mrs. Casas. The need to place the murder weapon in Guerra's hand was important — critical to the State's case against him. Thus, the State's need for the Valero evidence was considerable.

Obviously, evidence of an extraneous offense does have some inherent tendency to suggest a verdict on an improper basis — conviction based on an offense other than the one at issue. However, in this case, we do not find that the evidence of the Valero robbery, in which no one was injured and few items were taken, was such that it had the potential to make an irrational, indelible impression on the jury. Particularly given the other actions ascribed to Guerra and his friends earlier in the evening.

Finally, the time needed to develop the evidence of the Valero robbery was minimal in this case. As noted above, Deputy Olivarez made but two references to the incident, stating he was called out to investigate a robbery at the Valero and then making a vague reference to another criminal incident. Thereafter, the State, in approximately two pages of testimony, had Guerra's statement read to the jury. In that statement, Guerra also made two references to the Valero robbery. Finally, one of the clerks from the Valero station testified about what happened during the course of the robbery — the testimony taking up approximately fourteen pages. Our review of the record establishes the trial lasted approximately ten days and there were five volumes of testimony, comprising more than eight hundred pages, and an exhibit volume referencing one hundred and eighty exhibits. The evidence of the Valero robbery comprised, at best, twenty-five pages of testimony, i.e., .03 percent of the testimony. Accordingly, we hold the evidence of the Valero robbery clearly did not consume an inordinate amount of time when the total amount of testimony and evidence is considered. *Cf. Newton*, 301 S.W.3d at 320–21

After considering the probative value of the evidence relating to the Valero robbery, the potential effect on the jury, the State's need for the evidence, and the time taken by the State to

develop it, *see Shuffield*, 189 S.W.3d at 787; *see also Gigliobianco*, 210 S.W.3d at 641–42, we hold the evidence was not unfairly prejudicial because it did not have "an undue tendency" to suggest the jury find Guerra guilty "on an improper basis." *See Reese v. State*, 33 S.W.3d at 240. Accordingly, we hold the trial court's decision to admit the evidence relating to the Valero robbery — finding its probative value was not outweighed by its prejudicial effect — was not outside the zone of reasonable disagreement.

### *Mistrial — Closing Argument by the State*

In his third and final point of error, Guerra contends the trial court erred in denying his motion for mistrial, which was lodged in response to a portion of the State's closing argument. Guerra contends the prosecutor made a remark that struck at Guerra "over the shoulders" of his counsel, requiring a mistrial under the Sixth Amendment.

### *Standard of Review*

An appellate court reviews a trial court's ruling on a motion for mistrial for an abuse of discretion, and we reverse the court's ruling only if it was outside the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Archie*, 221 S .W.3d at 699 (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). In determining whether the trial court erred in denying Guerra's motion for mistrial on the basis of an allegedly improper argument by the State, we look to "most, if not all, of the same considerations that attend a harm analysis." *See Archie*, 221 S.W.3d at 699 (quoting *Hawkins*, 135 S.W.3d at 77). Accordingly, we apply the test articulated in *Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998) and balance the following three factors to determine whether a mistrial is appropriate: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the

judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Archie*, 221 S.W.3d at 700.

*Application*

During the State's closing argument, the following occurred:

[THE STATE]: Ladies and gentlemen, lawyers like to make things difficult. And what's true of lawyers is especially true of defense lawyers —

[THE DEFENSE]: Well, Your Honor, I'm going to object to the fact that the Defendant and his Counsel —

THE COURT: Sustained.

[THE DEFENSE]: Thank you. Well, Your Honor, can we have an instruction to the Jury to disregard the improper comments by the Prosecutor.

THE COURT: The Jury is instructed to disregard that argument by the Prosecutor.

[THE DEFENSE]: We ask for a mistrial.

THE COURT: Overruled. It is denied.

Having reviewed the record in light of the *Mosley* factors, we hold the trial court did not abuse its discretion by denying Guerra's motion for mistrial. *See id.* Even if we assume the prosecutor's statement struck at Guerra over counsel's shoulders and was therefore so severe that it prejudiced Guerra, *see Hawkins*, 135 S.W.3d 78, Guerra has failed to establish harm under the remaining *Mosley* factors.

The second *Mosley* factor, as stated above, concerns the measures adopted to cure the alleged misconduct. *See Archie*, 221 S.W.3d at 700. Here, the trial court immediately instructed the jury to disregard the prosecutor's comment. Generally, any harm from an improper jury argument will be cured by an instruction to disregard. *Hawkins*, 135 S.W.3d at 84. Moreover, the prosecutor did not repeat the allegedly improper argument or make any further attempt to impugn criminal defense attorneys. We hold this single remark was not one that made such indelible

impression on the jury that it would ignore the trial court's specific and timely instruction to disregard. *See Archie*, 221 S.W.3d at 741.

The final *Mosley* factor concerns the certainty of convicting Guerra absent the prosecutor's remarks. *See id.* at 740. We find the evidence supporting Guerra's conviction compelling. Guerra admitted being at the Casas residence and participating in the burglary. Guerra merely claimed he did not shoot Mr. and Mrs. Casas, but that Frederick did. However, Mrs. Casas and Serna testified Guerra wielded the shotgun during the burglary. The clerk from the Valero store placed a shotgun in Guerra's hands. In addition, exhibits were admitted into evidence showing Guerra attempting to influence Serna to place the blame for the shooting on Frederick. Other exhibits suggested Guerra attempted to have his sister plant evidence to corroborate his story as opposed to that told by Serna and Frederick. We find this evidence, as well as other evidence produced by the State, sufficient to convict Guerra even in light of the prosecutor's remarks.

Therefore, after considering the severity of the prosecutor's alleged misconduct, the trial court's curative instruction, and the compelling nature of the evidence supporting the conviction, we hold the trial court's decision to deny Guerra's motion for mistrial was not outside the zone of reasonable disagreement. *See Archie*, 221 S.W.3d at 699–700. Accordingly, we overrule Guerra's third point of error.

## CONCLUSION

Having considered Guerra's complaints, we overrule his points of error and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish