

In The

# Court of Appeals

## Seventh District of Texas at Amarillo

_____

No. 07-15-00125-CR

_____

MARVIN TAYLOR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F-2012-0490-C; Honorable Brody Shanklin, Presiding

March 28, 2017

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Marvin Taylor, was convicted following a jury trial of three counts of aggravated sexual assault.[1] He was sentenced to forty-five years confinement and assessed a fine of $10,000 on each count, with the three sentences to run concurrently. In a single issue, Appellant asserts the trial court erred by overruling his objection to

---

[1] See TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i)-(iii), (2)(iv), (b) (West Supp. 2016). Each offense is a first degree felony.

testimony by a Sexual Assault Nurse Examiner (SANE nurse) regarding information relayed to her by an unidentified translator who was assisting her in obtaining a description of the assault from the complainant, L.R.,[2] whose principle language was Spanish.[3] We affirm.

BACKGROUND

In March 2012, a three-count indictment issued alleging that on August 18, 2009, Appellant intentionally and knowingly caused (1) the penetration of L.R.'s mouth by his sexual organ, (2) Appellant's mouth to contact L.R.'s sexual organ, and (3) the penetration of L.R.'s sexual organ, without her consent, by threatening to use force against her and by the actual use of physical force, and in the course of the same criminal episode, he used or exhibited a deadly weapon, to-wit: a knife. In February 2015, a three-day jury trial was held.

During trial, Paula Fornara, a SANE nurse, testified she examined L.R. the day of the assault. Recognizing L.R.'s principle language was Spanish, she called LanguageLine—a translating service provided by the hospital. A translator returned her call and Fornara explained what she needed, i.e., a word-for-word translation of her questions to L.R. and L.R.'s responses. Thereafter, Fornara obtained L.R.'s history including a description of the assault while on speaker phone with the translator.

Fornara testified that L.R. told her (through the translator) that someone came up behind her and put a knife to her throat. When she turned around, the knife was put to

---

[2] To protect the privacy of the complainant, we refer to her by her initials.

[3] At trial, Appellant's attorney objected to admission of the SANE nurse's testimony and examination records asserting a violation of his right of confrontation of L.R.'s translator. Appellant's attorney sought to find out the translator's identity and contest her reliability.

her neck, and she was told to be quiet and remove her pants. The assailant pulled down his shorts. He told her to perform oral sex on him and placed his penis in her mouth. Afterwards, he turned her over and penetrated her vagina with his penis. He continued to threaten her with his knife and penetrated her five or six times. He also put his mouth on her genitals and rubbed his finger over her rectum. Fornara described L.R. as tearful and frightened as she recounted the assault. During L.R.'s physical examination, Fornara observed an abrasion to her genital area and small tear at the base of her hymen.

At trial, L.R. testified (through a translator) regarding many, if not all, of the same facts in addition to giving a more detailed description of the assault and a description of her assailant. Further, some months after the assault, she identified Appellant as her assailant from a line-up of six similar-looking persons, paying particular attention to his long, curly eyelashes. Numerous law enforcement officers who were present at the scene of the assault testified L.R. was distraught, traumatized, in shock, crying, very upset, talking extremely fast, and uncontrollably shaking. One officer described her as someone who had obviously had something very tragic happen to her. DNA consistent with Appellant was found on L.R.'s vaginal swab taken shortly after the assault. Samples taken from the floor in the room where the assault occurred tested positive for L.R.'s blood and DNA. There was also testimony from law enforcement officers and Fornara corroborating L.R.'s claim that she cut her finger attempting to fend off the knife used to threaten her into submission.

Appellant's testimony contradicted L.R.'s testimony of an assault. In sum, he testified the acts in question were consensual. Thereafter, the jury found him guilty on

all three counts of aggravated sexual assault using a deadly weapon and assessed his sentence.  This appeal followed.[4]

RIGHT TO CONFRONTATION

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to confront the witnesses against him.  *See* U.S. CONST. amend. VI.  The Confrontation Clause provides a criminal defendant with the right to physically face those who testify against him and the right to conduct a meaningful cross-examination.  *See Delaware v. Fensterer*, 474 U.S. 15, 18-19, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).  "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *See Fensterer*, 474 U.S. at 20 (emphasis added).  "The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying."  *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis v. Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974)).

In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that the Sixth Amendment prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-

---

[4] Originally appealed to the Second Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Second Court of Appeals and that of this court on any relevant issue.  TEX. R. APP. P. 41.3.

examination." *Id.* at 53-54. Generally, a statement is testimonial if it is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51. *See Grant v. State*, 218 S.W.2d 225, 230 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, ___ U.S. ___, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011)).

We must, therefore, first determine whether the statements by the translator were testimonial in nature. *See Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008) ("[T]he [defendant] did not have a prior opportunity to cross-examine [the accuser]. Therefore, the admissibility of these statements through [someone else's] testimony hinges on the determination of whether the statements were testimonial or nontestimonial."). Although a trial court's ruling on an evidentiary matter is viewed under an abuse of discretion standard, a constitutional legal ruling—such as the nature of the challenged statement—is reviewed *de novo*. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). *See also Trigo v. State*, 485 S.W.3d 603, 610 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Therefore, we review *de novo* the determination regarding whether the translator's statements were testimonial. *Rodriguez v. State*, 274 S.W.3d 760, 765 (Tex. App.—San Antonio 2008, no pet.).

We hold that the translator's rendition of L.R.'s statements to Fornara were not testimonial, i.e., the translator was never a witness against Appellant but merely a conduit or tool used by Fornara to understand Appellant's statements to her.

5

Appellant's attorney had the opportunity to perform, and did perform, a vigorous cross-examination of the actual witnesses against him. Furthermore, the translator's statements were not "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *See Crawford*, 541 U.S. at 51. There was no evidence in the record establishing the translator had any self-interest in or bias toward the proceedings. In fact, Fornara did not choose the translator or even know the translator's identity. The translator was provided by a service normally used by the hospital, and Fornara advised the translator that she needed *verbatim* translations of her questions to L.R. and L.R.'s responses.

Moreover, even if we were to assume there was error in the admission of L.R.'s translated communications through Fornara, certain constitutional errors are subject to a harmless error analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(a). Violation of the Confrontation Clause of the Sixth Amendment is a "non-structural" error of constitutional dimension that is subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); *Bibbs v. State*, 371 S.W.3d 564, 570 (Tex. App.—Amarillo 2012, pet. ref'd). In making a harmless error determination under Rule 44.2(a), appellate courts should adhere strictly to the question of whether the error committed in that particular case contributed to the verdict obtained in that case. *Snowden v. State*, 353 S.W.3d 815, 821 (Tex. Crim. App. 2011). If the record reveals constitutional error that is subject to harmless error review, we must reverse the judgment of conviction or punishment

unless we are able to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).

Here, the challenged statements were cumulative of other evidence. *See Langham*, 305 S.W.3d at 582 & n.42. In addition, L.R.'s testimony, the physical evidence, and other testimony admitted at trial provided corroboration for the challenged statements, and the prosecution's case was otherwise strong. *Id.* Having reviewed the entire record, we can determine beyond a reasonable doubt that error, if any, did not contribute to Appellant's conviction. *Id.* As such, the error, if any, would be harmless under the circumstances. Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.