James T. Campbell, Justice *903 Over his plea of not guilty, a Hardeman County jury convicted appellant Gary Andrew Callaway of the offense of capital murder,[1] requiring the assessment of a sentence of life imprisonment without the possibility of parole.[2] Appellant appeals, challenging his conviction through seven issues. We will affirm the trial court's judgment.
Background
The indictment alleged appellant murdered two people, Terrance Besaw and Lisa Waddle. At his trial, the State presented evidence to show that on an afternoon in April 2015 appellant shot Besaw three times and Waddle six times, causing their deaths. Appellant did not testify at trial, but the admitted evidence included the audio of his recorded interview by Texas Rangers, in which appellant told the officers he shot both victims. No eyewitness to the murders testified. Much of the evidence pertinent to the appeal came from appellant's recorded interview and from testimony of statements he made to others.
The killings occurred at a farm house in Hardeman County, belonging to the family of Patrick Morris. Appellant said several people, including Besaw and "some woman," were there.
Appellant said he engaged in some target shooting outside and then came inside to go to the bathroom. He had a gun in his hand. He said he walked into the house and "smelled some anhydrous ammonia cooking...." Besaw came into the room, said something to him and retreated into the hallway. Appellant followed him. He turned the corner to the bedroom and saw Besaw with a "barrel pointed at [him]" and "that was it." He stated, "I reacted ... I shot him." Appellant said he shot Besaw three times.
Appellant said he walked outside and Waddle, who he did not know, was sitting inside a pickup truck. Waddle began running toward the roadway and appellant shot her as she ran. He said he shot her "[t]wice, she was still running. On the third one she dropped." Appellant walked over to her and saw she was still breathing. He stood five or ten feet away and shot her three more times.
Appellant was arrested at a motel in Wichita Falls a week after the murders. No murder weapon ever was found. Appellant said he threw the pistol, and the weapon he said Besaw pointed at him, in a river.
The jury found appellant guilty of the single offense of capital murder as charged in the indictment, and punishment was assessed as noted.
Analysis
Through his seven issues, appellant asserts complaints about the jury charge, the sufficiency of the evidence to support his conviction, and the admission of his confession and various photographs, and challenges two of the trial court's rulings. We will begin with appellant's sixth issue.
Issue 6-Unanimity in Jury Charge
In his sixth issue, appellant complains that the court's charge to the jury *904 denied him the right to a unanimous verdict. Texas law requires that a jury reach a unanimous verdict about the specific crime the defendant committed. TEX. CONST. art. V, § 13 ; Cosio v. State, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (citation omitted).
The indictment charging appellant with capital murder contained two paragraphs. The first paragraph alleged appellant caused the death of Besaw by shooting him with a firearm and killed Waddle by shooting her with a firearm during the same criminal transaction.[3] The second paragraph alleged appellant caused the death of Waddle by shooting her in the course of committing or attempting to commit the offense of obstruction or retaliation.[4]
In considering potential jury-charge error, we first determine whether the charge contained error by allowing the possibility of a non-unanimous verdict. Cosio, 353 S.W.3d at 771.
The trial court instructed the jury in the disjunctive, allowing it to find appellant guilty of capital murder under either of the two theories set out in the indictment: appellant murdered Besaw and Waddle during the same criminal transaction or appellant murdered Waddle in the course of committing or attempting to commit the offense of obstruction or retaliation. Because appellant asserted he killed Besaw in self-defense, the application paragraph for the theory requiring the jury to find he murdered Besaw also contained a self-defense instruction. And, the charge included an instruction that the "verdict must be unanimous." The verdict form simply asked for a general verdict of guilty of capital murder, guilty of murder, or not guilty.
Appellant contends an analysis like that set out in Vernon v. State , 841 S.W.2d 407 (Tex. Crim. App. 1992), should govern our review of his jury-unanimity issue. Vernon was a prosecution for sexual assault of a minor, and the complaint on appeal involved the admission of evidence that the defendant had assaulted the victim on a number of occasions. In the course of its discussion of the extraneous-offense evidence, the court made clear that each of the assaults constituted a separate offense. Id. at 410. Appellant would have us treat the indictment's two paragraphs as alleging separate offenses, requiring the jury unanimously to agree on one paragraph's allegations to convict him of capital murder.
Appellant's contention disregards the manner in which jury unanimity is treated in capital murder prosecutions. The capital murder statute requires the State to allege a "predicate murder" as defined under Penal Code section 19.02(b)(1) and any one of nine additional aggravating circumstances. Saenz v. State, 451 S.W.3d 388, 390 (Tex. Crim. App. 2014). The indictment "may contain as many separate paragraphs charging the same offense as is necessary to meet the contingencies of the evidence." Graham v. State, 19 S.W.3d 851, 853 (Tex. Crim. App. 2000) (citing Hathorn v. State , 848 S.W.2d 101, 113 (Tex. Crim. App. 1992) ). The aggravating circumstances set out in section 19.03(a) describe alternate methods of committing capital murder.
*905 Davis v. State , 313 S.W.3d 317, 342 (Tex. Crim. App. 2010). "When an indictment alleges differing methods of committing capital murder in the conjunctive, the jury may properly be charged in the disjunctive." Saenz, 451 S.W.3d at 390 (citations omitted). The charge "may disjunctively allege 'all alternate theories of capital murder contained within § 19.03, whether they are found in the same or different subsections, so long as the same victim is alleged for the predicate murder.' " Davis , 313 S.W.3d at 342 (citing Gamboa v. State, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009) ).
Both the paragraphs in appellant's indictment required proof that he murdered Waddle. Her murder is thus the "predicate murder" under § 19.02(b)(1). The paragraphs then alleged aggravating circumstances under § 19.03(a)(2) and § 19.03(a)(7). Because those allegations merely stated alternative theories of committing the single offense of capital murder, the unanimity requirement was not violated by allowing the jury to convict without a unanimous verdict on one of the alternatives. Martinez v. State , 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) ; see Gamboa , 296 S.W.3d at 582-83 (citing Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ).
We resolve appellant's sixth issue against him.
Issue 1-Sufficiency of the Evidence under Section 19.03(a)(7)(A)
Appellant's first and second issues challenge the sufficiency of the evidence to support a finding of guilt under either of the indictment's two theories. By his first issue, appellant contends the evidence was insufficient to prove he was guilty of capital murder under section 19.03(a)(7)(A) because there was evidence he killed Besaw in self-defense.
We review the sufficiency of the evidence under the standard set forth in Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Brooks v. State, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (plurality op.). Under that standard, a reviewing court must consider all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Gear v. State, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citations omitted).
The jury is the sole judge of the weight and credibility of the evidence and we presume the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. Dobbs v. State , 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). We determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).
To prove the offense of capital murder under section 19.03(a)(7)(A) as set forth in the indictment here, the State was required to prove appellant committed a murder under section 19.02(b)(1) of the penal code and murdered another person during the same criminal transaction. TEX. PENAL CODE ANN. §§ 19.02(b)(1) ; 19.03(a)(7)(A). Appellant does not argue the evidence was insufficient to show he killed both Besaw and Waddle. He argues only he was justified in killing Besaw and the jury for that reason could not rationally convict him of capital murder.
It is a defense to prosecution if a person's conduct is justified by Chapter 9 of the Texas Penal Code. Roberts v. State , No. 07-14-00413-CR, 2016 WL 6693859, at *3, 2016 Tex. App. LEXIS 12208, at *7-8 (Tex. App.-Amarillo Nov. 14, 2016, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 9.02 (West 2011) ). Under Chapter *906 9, a person generally is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against another's use or attempted use of unlawful force. Id. (citing TEX. PENAL CODE ANN. § 9.31(a) ). When the force in question is deadly, the person is justified in using such force in self-defense if the above test is met and the person reasonably believes that deadly force is immediately necessary either to protect himself against the other's use or attempted use of unlawful deadly force. Id. The defendant has the initial burden of production and must bring forth some evidence to support the defense. Id. (citing Zuliani v. State , 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) ; Hernandez v. State, 309 S.W.3d 661, 665 (Tex. App.-Houston [14th Dist.] 2010, pet. ref'd) ). Once the evidence is produced, the State bears the burden of persuasion to disprove the defense. Id. at *3, 2016 Tex. App. LEXIS 12208 at *8 (citation omitted). This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt. Id. (citation omitted). When the trier of fact finds the defendant guilty, there is an implicit finding rejecting the defendant's self-defense theory. Id. (citing Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) ; Hernandez, 309 S.W.3d at 665 ).
After review of the record, we conclude the jury rationally could have rejected appellant's claim of self-defense. The record contains strong evidence appellant did not act in self-defense.
First, some of appellant's own descriptions attribute the shooting to other motivations. Appellant said in his recorded interview Besaw "pulled" a gun on him as appellant was coming around the corner into the bedroom, and appellant just "reacted." But appellant also said in his recorded interview that he shot Besaw because he "snapped" and "lost [his] mind" after he smelled anhydrous ammonia in the house. Appellant's father testified appellant told him he shot Besaw and Waddle, reiterating his contention that he smelled anhydrous ammonia and went "crazy."
And other witnesses testified appellant said he went to the farm to "handle his business" and that appellant had said Besaw was a "snitch." Appellant's niece, Kristin Brown, testified that on the morning of the murders, appellant came to her home asking her for a gun. Appellant told her Besaw was at the farm and that Besaw was "working for the cops and my mom was going to be in danger."[5]
The jury could have seen appellant's efforts to cover up his involvement in the shooting as inconsistent with a claim of self-defense. See Saxton, 804 S.W.2d at 914 (jury evaluates credibility of defensive evidence). Appellant picked up the shell casings in the bedroom after he shot Besaw, and said he later threw away his bag and boots on the way to Wichita Falls. As noted, he also said he threw the gun he used to shoot Besaw and Waddle into the river, as well as the gun he said Besaw had.
Other evidence also supports the jury's implicit rejection of appellant's self-defense theory. See Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (jury may choose to believe some testimony and disbelieve other testimony). There was evidence from more than one source that Besaw was lying down when he was first shot, not confronting appellant with a gun.
Morris testified he was at the house that day. He testified he had been asleep but awoke late in the afternoon shortly before *907 appellant arrived. He told the jury he saw Besaw asleep in the bedroom. He testified Besaw had Morris's .22-caliber "9 shot antique target pistol" on his person earlier that morning. That pistol was found under the mattress on which Besaw had slept, after his death. Morris also told the jury he did not smell any anhydrous ammonia.
Appellant's friend Dominique Fells testified appellant told him he had "ended two people" and told Fells Besaw was asleep when he shot him the first time. Fells said appellant told him he then shot Besaw in the head. In her testimony, the medical examiner described the path of one bullet that entered Besaw's lower lip, passed through his tongue, esophagus, cervical spine, spinal cord and right vertebral artery before exiting the back of his neck.
The medical examiner also testified the position of one of Besaw's wounds was consistent with Besaw lying down when he was shot.[6] There was a bullet hole in the mattress, and the fired round was recovered under the mattress. The mattress also had Besaw's blood on it.
Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found appellant guilty of capital murder beyond a reasonable doubt by choosing to believe the evidence favoring conviction and by choosing to disbelieve any evidence favoring self-defense. Roberts, 2016 WL 6693859, at *4, 2016 Tex. App. LEXIS 12208, at *11 (citations omitted). We resolve appellant's first issue against him.
Issue 2-Sufficiency of the Evidence Under Section 19.03(a)(2)
In his second issue, appellant contends the evidence is insufficient to support his conviction under the State's second theory, which alleged he intentionally or knowingly caused the death of Waddle while appellant was committing or attempting to commit obstruction or retaliation against her.
A person commits capital murder if he intentionally or knowingly causes the death of an individual and intentionally commits the murder in the course of committing or attempting to commit obstruction or retaliation. Moreno v. State, No. 05-09-00700-CR, 2011 WL 2090245, at *4, 2011 Tex. App. LEXIS 4108, at *10-11 (Tex. App.-Dallas May 27, 2011, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) ). A person commits retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant, witness, prospective witness, informant, or person who has reported or who the actor knows intends to report the occurrence of a crime. Id. ( citing TEX. PENAL CODE ANN. § 36.06(a)(1) ). A person commits obstruction if he intentionally or knowingly harms or threatens to harm another by an unlawful act to prevent or delay the service of another as a public servant, witness, prospective witness, informant, or person who has reported or who the actor knows intends to report the occurrence of a crime. Id. (citing TEX. PENAL CODE ANN. § 36.06(a)(2) ).
Through its amendments to the statute, the "legislature [has] attempted to account for every category of person who might possess information regarding criminal activity which may lead to the apprehension of a criminal offender."
*908 Moreno, 2011 WL 2090245, at *4, 2011 Tex. App. LEXIS 4108, at *11 (citation omitted). A "prospective witness" is any person who may testify in an official proceeding. Id. (citation omitted). "Whether one is a prospective witness must be judged from the standpoint of the one accused of retaliation." Id. (citation omitted).
At trial, and still on appeal, appellant has contended Waddle cannot properly be viewed as a prospective witness to his shooting of Besaw. He notes she was outside the house during that shooting and could not have seen him kill Besaw. He argues for that reason she could not have been even a potential witness to the crime. Thus, he contends, he cannot be guilty of capital murder because he could not have killed Waddle while committing or attempting to commit obstruction or retaliation.
Appellant further argues there is no evidence he "knew or even thought she could be" a potential witness. Some of appellant's statements, however, suggest otherwise. In his recorded interview, appellant said he did not feel bad for what he did to Besaw because he "felt like I was protecting myself." As for Waddle, he said, "I felt like I was protecting my interests, I guess." Asked if Waddle was a victim of circumstance, appellant responded, "wrong place, wrong time." Dominique Fells told the jury appellant said, regarding Waddle, that he "ended that bitch."
As for Waddle's status as a prospective witness, the evidence at the least permits the rational inference she saw appellant as he came from the house with a gun in his hand and was alarmed, because she began to run from him. The truck in which she sat was parked just outside the house, and it requires little imagination to infer she heard the shots as appellant killed Besaw. In any event, her testimony, had it been available, plainly would have placed appellant at the scene.
The evidence allowed the jury rationally to infer that the "interest" appellant was protecting when he intentionally killed Waddle was the same interest that caused him to pick up his shell casings in the house, and that he killed her to prevent her service as a prospective witness to his shooting of Besaw. Nickerson v. State, 478 S.W.3d 744, 755 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (citing Clayton v. State , 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ) (circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence can be sufficient to establish guilt). We find the evidence sufficient to support a finding of guilt under the State's second theory, and overrule appellant's second issue.
Issue 3-Voluntariness of Confession
Via his third issue, appellant asserts the trial court abused its discretion in denying his motion to suppress his confession contained in his recorded interview because it was not voluntarily and knowingly made as required by article 38.22 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018).
The trial court held a hearing on appellant's motion to suppress. The only witness was one of the Texas Rangers who conducted appellant's interview. Appellant's argument is brief. He says in his appellate brief he was interrogated for several hours at a DPS facility by two Texas Rangers, had not slept for several days and "was clearly exhausted, emotional and disoriented."
At a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given their testimony.
*909 State v. Kaplan, No. 07-16-00135-CR, 2017 WL 219111, at *2, 2017 Tex. App. LEXIS 395, at *3-4 (Tex. App.-Amarillo Jan. 18, 2017, no pet.) (mem. op., not designated for publication) (citing Thomas v. State , No. 10-11-00250-CR, 2013 WL 2639168, at *2, 2013 Tex. App. LEXIS 6943, at *6 (Tex. App.-Waco June 6, 2013, no pet.) (mem. op., not designated for publication)). Reviewing its ruling, we afford almost total deference to a trial court's determination of the historical facts that the record supports, particularly when its fact findings are based on an evaluation of credibility and demeanor. Id. (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (citation omitted)).
We review the trial court's application of the law under a de novo standard. Linon v. State, 99 S.W.3d 918, 924 (Tex. App.-El Paso 2003, no pet.) (citing O'Hara v. State, 27 S.W.3d 548, 550 (Tex. Crim. App. 2000) ). The trial court's ruling will be affirmed if it is correct under any theory of law. Id. (citations omitted). If, "from the totality of the circumstances, it can be said that a statement was made freely and voluntarily, without compulsion or persuasion to the extent that the defendant's will was overborne, then the statement may be fairly characterized as voluntary." Id. (citation omitted). Before we can determine appellant's confession was involuntary, we must find that, at the time the confession was made, appellant was unable to make an independent, informed choice of free will. Id. (citing Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996) ; Saldana v. State, 59 S.W.3d 703, 712 (Tex. App.-Austin 2001, pet. ref'd) ). Factors we may consider in determining whether the will of an accused has been overborne include: "length of detention; incommunicado or prolonged interrogation; denying access to a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality." Id. (citation omitted).
After its hearing, the trial court entered findings of fact and conclusions of law. In those findings and conclusions, the trial court found appellant gave a voluntary statement. It found appellant was admonished of his constitutional and statutory rights, fully understood his rights, and voluntarily waived his right to remain silent. The trial court also found appellant made his statement "free of any threats, compulsion or coercion" and was not promised anything in return for his statement. Further, the court found, "[n]o force was used or promises made" to persuade appellant to make his statement. Other than his general challenge to the voluntariness of the statement, appellant raises no challenge on appeal to the trial court's findings.
The record contains a written transcript of the interview and we have reviewed that transcript and the audio recording of the interview. The interview lasted just under three-and-a-half hours. According to the Ranger's testimony at the hearing, the interview was held in a room with a closed door. Nothing in the record or in appellant's contentions suggests any impropriety on the part of the Rangers. The testifying Ranger said appellant told them he "couldn't remember the last time he slept," but the record also shows appellant had been staying alone in a motel during the days before his arrest. We are unable to see any indication appellant was in such a state that he was "unable to make an independent, informed choice of free will." Licon, 99 S.W.3d at 924.
Reviewing appellant's statement and taking into consideration the totality of the circumstances, we find ample evidence to support the trial court's finding that the confession was voluntary. The trial court did not err by admitting appellant's confession into evidence at trial. We overrule appellant's third issue.
*910 Issue 4-Admission of Photographs Over Rule 403 Objection
By his issue four, appellant complains of the trial court's admission of color photographs, over his objection.
The admissibility of photographic evidence lies within the sound discretion of the trial court. Shuffield v. State, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006). Its decision to admit or exclude evidence will not be overturned on appeal absent a showing that the trial court abused its discretion. Young v. State, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009). The Texas Rules of Evidence favor admission of all relevant evidence at trial. Hernandez-Sandoval v. State, No. 07-11-00085-CR, 2012 WL 3870306, at *12, 2012 Tex. App. LEXIS 7660, at *39 (Tex. App.-Amarillo Sep. 6, 2012, pet. ref'd) (mem. op., not designated for publication) (citing TEX. R. EVID. 401 ). However, these evidentiary rules do provide exceptions that would exclude otherwise relevant and admissible evidence. Id. (citing TEX. R. EVID. 401 ).
One exception is set forth in Rule of Evidence 403, which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When an objection is made on the basis of rule 403, a court must weigh the probative value of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). A court may consider the following factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice: (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are offered in color or in black and white, (6) whether they are close-up, and (7) whether the body depicted is clothed or naked. Wilson v. State , No. 05-15-01407-CR, 2017 WL 56400, at *13, 2017 Tex. App. LEXIS 98, at *40-41 (Tex. App.-Dallas Jan. 5, 2017, no pet.) (mem. op., not designated for publication) (citation omitted). See also Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (listing similar factors).
On appeal, appellant first discusses the State's exhibits 62 through 71, photographs of Besaw's body. The pictures of Besaw merely depict the condition of his body at the outset of the autopsy and the nature and locations of his wounds. In one photograph, he appears fully clothed; others show him without a shirt. In some pictures, his wounds have not been cleaned, and they are bloody. None of the pictures depict mutilation of the body by the autopsy.
Our courts routinely make the statement that autopsy photographs are generally admissible "unless they depict mutilation of the victim caused by the autopsy itself." See, e.g., Davis v. State , 313 S.W.3d 317, 331 (Tex. Crim. App. 2010) (citing Santellan, 939 S.W.2d at 172 ).
Exhibits 79 and 80 are of Waddle. Exhibit 78, which is not discussed on appeal, is a photograph of Waddle's face, depicting bullet wounds. One bullet entered the left side of her head, between her ear and her left eye. The medical examiner described that wound as the fatal wound. Exhibits 79 and 80 are autopsy photographs showing the internal damage caused by that bullet. They depict mutilation of Waddle's body caused by the autopsy itself. One picture shows the surface of *911 Waddle's exposed brain. The medical examiner told the jury she made "an incision over the top of the head and remove[d] the top part of the skull." The medical examiner used the photograph to show the jury the hemorrhaging, "bleeding over the surface of the brain," that was related to the fatal gunshot wound. But the photograph does not depict only the exposed brain. Waddle's scalp, peeled off her skull, is shown. The result is a grotesque image of the exposed brain with her peeled-down scalp covering Waddle's face and the hair attached to the scalp now covering the front of her neck. At the bottom of the photograph, further mutilation, apparently resulting from the opening of Waddle's upper chest during the autopsy, also is seen.
As the medical examiner described it, the other picture shows the base of Waddle's skull after the brain had been removed. From the picture, the examiner described for the jury the bullet's path through the bones of the face, into the cranial cavity, through the location of the carotid arteries, through the bone containing "structures related to your hearing," and out the right ear, and described the damage along the path. This picture is less gruesome than exhibit 79 because it is a more close-up image of the bony structures of the inside of the skull, and contains no view of Waddle's features.
After the court's hearing outside the jury's presence, and as he overruled appellant's objection to exhibits 79 and 80, the trial court stated he had taken "an especially close look" at the two exhibits. We too find the photographs, particularly exhibit 79, troubling. The Court of Criminal Appeals described a photograph depicting a gunshot wound to the head of a victim, in which the medical examiner had "pulled back" the skin around the wound to show the path of the bullet. Overruling the point of error challenging the trial court's admission of the photograph over a Rule 403 objection, the court noted that if the skin had not been pulled back, "the jury would not be able to see the full extent of one of [the victim's] fatal injuries." It continued, "The action of pulling back the skin did not make the evidence significantly more gruesome." It went on to conclude that the exhibit's admission was harmless even if erroneous. Hayes v. State , 85 S.W.3d 809, 816 (Tex. Crim. App. 2002).
In this case, the medical examiner's testimony concerned the blood visible in the crevices of Waddle's brain and the brain hemorrhaging the blood demonstrated. Unlike the photograph in Hayes , exhibit 79's depiction of Waddle's head and upper chest did make that aspect of the State's evidence significantly more gruesome. Hayes , 85 S.W.3d at 816. While some depiction of the blood from Waddle's brain may have been necessary to allow the jury to see that aspect of her injuries, we find it difficult to imagine that such a limited purpose could not have been served without exhibition of so disturbing a photograph as exhibit 79. See id. at 815 ( Rule 403 analysis may include the availability of other means of proof). We will not say that the trial court's admission of exhibit 79 was outside the zone of reasonable disagreement, ids="11362083" index="65" url="https://cite.case.law/sw3d/85/809/#p816">id. at 815, but we find it a close call. Like the court in Hayes , however, even were we to find admission of the exhibit was an abuse of discretion, we would conclude it was harmless. Considering the contested issues before the jury, appellant's recorded statement and his other out-of-court statements, and the weight of other undisputed evidence, we have a fair assurance the exhibit did not influence the jury's finding of guilt. See ids="11362083" index="66" url="https://cite.case.law/sw3d/85/809/#p816">id. at 816 ; TEX. R. APP. P. 44.2.
As part of his appellate complaint, appellant argues the trial court further abused its discretion by admitting several *912 other photographs without conducting a hearing outside the presence of the jury to determine whether their probative value outweighed their prejudicial effect. We note the record shows the court did so for the other photographs to which appellant objected. But, the law is clear a trial court is not required to conduct such a hearing before making its ruling concerning admission, nor is it required sua sponte to place into the record any findings it makes or conclusions it draws when engaging in this test. Distefano v. State, 532 S.W.3d 25, 31 (Tex. App.-Houston [14th Dist.] 2016, pet. ref'd) ( Rule 403 does not require that the balancing test be performed on the record); Bibbs v. State, 371 S.W.3d 564, 575-76 (Tex. App.-Amarillo 2012, pet. ref'd) (citations omitted) (same). Here, appellant did not request the trial judge to state on the record his findings regarding the rule 403 balancing test. The trial judge is presumed to engage in the required balancing test once rule 403 is invoked, and the trial court's failure to conduct the balancing test on the record does not imply otherwise. Bibbs, 371 S.W.3d at 576. (citation omitted).
We overrule appellant's fourth issue.
Issue 5-Denial of Motion for Continuance to Secure Material Witness for Trial
Through his fifth issue, appellant contends the trial court erred by denying his oral motion for a continuance to secure the testimony of a witness, Shirley Brown, who was under subpoena but failed to appear to testify. The State contends the issue is not preserved for appellate review. We agree with the State's position.
The Texas Code of Criminal Procedure permits a continuance of a criminal action "only upon a written motion sworn to by the State or the defendant." Dixon v. State , 64 S.W.3d 469, 472 (Tex. App.-Amarillo 2001, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2016) ). The Court of Criminal Appeals has construed the requirements of article 29.03 and 29.08"to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance. Thus, if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." Anderson v. State, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009) (citations omitted).
Because appellant did not move for a continuance via a written, sworn motion, he has not preserved his complaint for our review. Id.
Even had the motion been written and sworn, our review of the record satisfies us the trial court did not abuse its discretion by denying the continuance. See Wilson v. State , No. 07-07-0501-CR, 2009 WL 1011158, at *4, 2009 Tex. App. LEXIS 2567, at *10-11 (Tex. App.-Amarillo Apr. 15, 2009, no pet.) (mem. op., not designated for publication) (citing Janecka v. State , 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) ) ("[w]here the continuance is requested because of a missing witness, if the evidence does not indicate a probability that the witness can be secured by a postponement, or if it appears that a continuance due to the absence of the witness would delay the trial indefinitely, the motion may be properly denied)."
We overrule appellant's fifth issue.
Issue 7-Trial Court's Refusal to Require Witness to Invoke Fifth Amendment Rights Before the Jury
In his last issue, appellant argues the trial court erred when it denied appellant's request to have a witness invoke his Fifth Amendment rights in front of the jury. The trial court called the witness outside the presence of the jury and confirmed that the witness intended to invoke his rights against self-incrimination. Appellant created a bill, asking the witness each *913 question he intended to ask, and the witness invoked his right in response to each question. The trial court determined there was no need for the witness to assert the privilege before the jury.
When a witness has a valid Fifth Amendment privilege, it is generally error to require a witness to invoke the privilege in the presence of the jury when it is known the witness will invoke that right. Hudnall v. State , No. 01-07-00858-CR, 2008 WL 2985435, at *7, 2008 Tex. App. LEXIS 5877, at *20 (Tex. App.-Houston [1st Dist.] July 31, 2008, pet. ref'd) (mem. op., not designated for publication) (collecting and discussing cases) (citations omitted). "A party has no right to have a witness invoke 'the Fifth' in the presence of the jury because refusal of a witness to testify for self-incrimination reasons cannot be made the basis of any inference by the jury, either favorable to the prosecution or to the accused." Safari v. State, 961 S.W.2d 437, 443 (Tex. App.-Houston [1st Dist.] 1997) (citation omitted).
The record here is very clear that the court and the parties were fully aware of the witness's intent to invoke his privilege in response to each question asked. Accordingly, we find no error in the trial court's ruling and resolve the issue against appellant.
Conclusion
Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

Tex. Penal Code Ann. § 19.03(a) (West 2018).

Tex. Penal Code Ann. § 12.31(a)(2) (West 2018); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West 2018).

Tex. Penal Code Ann. § 19.03(a)(7)(A) (West 2018) (person commits capital murder if he murders more than one person during same criminal transaction).

Tex. Penal Code Ann. § 19.03(a)(2) (West 2018) (person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit other listed offenses, including obstruction or retaliation).

Evidence showed Patrick Morris was then appellant's mother's boyfriend.

She said the bullet entered the back of Besaw's thigh and exited on the front of the thigh, injuring the "femoral artery vein," leading to "a lot of bleeding." She said blood loss from such a wound could cause death. She expressed the opinion Besaw died from "multiple gunshot wounds."