**Opinion issued December 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00893-CR

———————————

**MAURICIO GALLARDO-GONZALEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1620865

## MEMORANDUM OPINION

Mauricio Gallardo-Gonzalez appeals his conviction for assault of a family member as a second offender, for which he was sentenced to eight years in prison and fined $10,000. *See* TEX. PENAL CODE § 22.01(b)(2). In two issues, Gallardo-

Gonzalez challenges the sufficiency of the evidence to support the jury's rejection of his claim of self-defense. We affirm.

## Background

Gallardo-Gonzalez lived with his wife, Linda Villalobos-Camara, and their two young children. Gallardo-Gonzalez had asked his wife to accompany him to a court hearing regarding a claim that he had been defrauded out of about $20,000. Gallardo-Gonzalez had stepped out of the apartment while his wife waited for the babysitter and cleaned the children's room. In addition to cleaning supplies, she used a knife with a three-to-five-inch long serrated blade to remove caked-on debris.

When Gallardo-Gonzalez came home, Villalobos-Camara said she did not want to accompany him to court. Gallardo-Gonzalez became enraged, screaming profanities, and throwing objects, including children's toys, at her. Many of the objects hit her, including a wheeled ride-on toy designed for a toddler. Villalobos-Camara remained silent and turned her back to him. Gallardo-Gonzalez then hit her, pulled her hair, and punched her multiple times on her back and her face. With the cleaning knife still in her hand, Villalobos-Camara screamed, swung her hands, and tried to push him away. Gallardo-Gonzalez stopped, left the room, and called 911 from a nearby parking lot.

Villalobos-Camara was treated at a hospital for injuries to her face, neck, and back. Photographs introduced into evidence at trial showed her just after the assault.

Both eyes, both lips, and her nose were swollen and bruised. The skin on her face was broken and bloody in places and her eyes appeared red and weepy. Her lips were also bloody. There was blood spatter on her shirt, pants, and hands. Villalobos-Camara was treated at a hospital.

Houston Police Officer J. Lewis responded to Gallardo-Gonzalez's 911 call. Officer Lewis met Gallardo-Gonzalez, who said he was stabbed by his wife. Gallardo-Gonzalez initially denied harming his wife, but later he told Officer Lewis that he kicked her one time. Officer Lewis observed stab wounds to the inside of Gallardo-Gonzalez's left arm and to the outside of his left leg. Gallardo-Gonzalez was taken by ambulance to a hospital.

Officer Lewis went to Gallardo-Gonzalez's apartment for further investigation. There was blood on the floor and on toys in the children's room. Small objects, including a toddler-sized wheeled ride-on toy, were scattered on the floor. Believing there was a need for more investigation, Officer Lewis called his supervisor, and they went to the hospital to speak with Villalobos-Camara. Officer Lewis later testified that, when he saw her, she was crying and looked worried. In Officer Lewis's opinion, one kick could not cause that the injuries he observed, and Villalobos-Camara "[looked] like a victim of domestic violence."

When Officer Lewis initially called the district attorney's office after speaking to Gallardo-Gonzalez, the district attorney declined to file charges. However, Officer

Lewis's supervisor again contacted the district attorney's office after meeting with Villalobos-Camara, and the decision was made to charge Gallardo-Gonzalez with assault of a family member. The offense was enhanced to a third-degree felony due Gallardo-Gonzalez's previous conviction for assault of a family member.

At trial, the State presented its case through three witnesses: Officer Lewis, the investigator; Deputy D. Payavla, a fingerprint expert; and Villalobos-Camara, the complainant.

Officer Lewis testified about his investigation. When he first arrived on the scene, he saw that Gallardo-Gonzalez had stab wounds to the inside of his left arm and outside of his left leg. The wounds bled "quite a bit." There were no noticeable injuries, marks, or redness on Gallardo-Gonzalez's hands. He also authenticated photographs of both Gallardo-Gonzalez and Villalobos-Camara that showed him in an ambulance with bandages covering his stab wounds and her with red, swollen, injured facial features and blood-spattered clothing.

Officer Lewis testified that Gallardo-Gonzalez was cooperative, and while he initially denied any physical violence toward his wife, he later told Officer Lewis that he kicked her once in the face before leaving.

On cross-examination, Officer Lewis acknowledged that he did not know "exactly what happened" because he was not there. Defense counsel asked whether

Gallardo-Gonzalez, who was stabbed in the incident, could have been acting in self-defense. Officer Lewis said that he "could have been."

Harris County Sheriff's Deputy D. Payavla testified that he worked in the crime scene unit as a latent fingerprint examiner. He confirmed that Gallardo-Gonzalez was convicted of assault of a family member, a Class A misdemeanor, on October 24, 2018.

Villalobos-Camara testified about a history of domestic abuse perpetrated by Gallardo-Gonzalez. She said that he angered easily and hit her frequently, but she stayed with him because he threatened her by saying he would prevent her from having access to their two young children. Villalobos-Camara testified that he had abused her throughout their four-year marriage.

Villalobos-Camara also testified about the assault in this case. She said that her husband became enraged when she told him that she did not want to go to court with him. When he berated her and began throwing objects at her, she turned her back to him and remained silent. However, she recalled that she had her cleaning knife in one hand, and she said that, at one point, she swung her arms in an attempt to push him away while he was hitting and punching her, but she said that she did not intend to stab him.

In the closing argument, defense counsel questioned Villalobos-Camara's credibility and argued that Gallardo-Gonzalez acted in self-defense. Defense counsel

5

based this argument on the physical evidence showing a significant amount of blood in the children's room and the knife, which defense counsel characterized as "a steak knife."

Gallardo-Gonzalez did not testify at trial. The trial court instructed the jury that it was not permitted to construe his decision not to testify negatively "for any purpose whatsoever." The court also instructed the jury on the law of self-defense, specifying that if the jury found that Gallardo-Gonzalez had acted in self-defense in response to Villalobos-Camara or if the jury had a reasonable doubt about whether Gallardo-Gonzalez had acted in self-defense, it was required to find him "not guilty."

The jury found Gallardo-Gonzalez guilty of assault of a family member as a second offender, and it assessed punishment of eight years in prison and a $10,000 fine. Gallardo-Gonzalez appealed.

**Analysis**

In two issues, Gallardo-Gonzalez challenges the sufficiency of the evidence to support the jury's rejection of his claim of self-defense. In his first issue, he argues that the State did not rebut his evidence of self-defense. In his second issue, he argues that the evidence was insufficient to support his conviction because Villalobos-Camara used unlawful deadly force against him.

## I. Standards of Review

### A. Standard of Review

In an appeal of a criminal conviction, we review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

We defer to the jury's credibility and weight determinations because the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve inconsistencies in the evidence in favor of the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B. Substantive Law

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including his spouse. TEX. PENAL CODE § 22.01(a)(1). Although usually a Class A misdemeanor, the offense is elevated to a

third-degree felony when it is committed against a person's spouse and the defendant has been previously been convicted of an assault involving family violence. *See id.* § 22.01(b)(2)(A); *see* TEX. FAM. CODE §§ 71.0021(b), 71.003, 71.005.

In a claim of self-defense that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). By contrast, the State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Zuliani*, 97 S.W.3d at 594 (citing *Saxton*, 804 S.W.2d at 913). Thus, when considering the sufficiency of the evidence in a case in which the defendant argued that he acted in self-defense, we do not scrutinize the State's evidence that refuted evidence of self-defense; rather "we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a

reasonable doubt." *Saxton*, 804 S.W.2d at 914. The jury's verdict of guilt is an implicit finding that it rejected the defense. *See id.*

Deadly force means "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE § 9.01(3). Deadly force used in self-defense is a defense to a murder prosecution if the use of deadly force is justified. *See id.* § 9.02, 9.31–.33; *Braughton v. State*, 569 S.W.3d 592, 606 (Tex. Crim. App. 2018). Subject to certain inapplicable exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a).

## C.     The jury had sufficient evidence to convict.

In his first issue, Gallardo-Gonzalez argues that his evidence of self-defense was more credible than the State's evidence refuting self-defense. Gallardo-Gonzalez relies on Officer Lewis's testimony that his actions "could have been" self-defense and the district attorney's preliminary decision not to prosecute. He contrasts this evidence that he maintains is probative of self-defense with Villalobos-Camara's testimony, which he asserts, without explanation, was so lacking in credibility that it "simply cannot support a conviction." In his second issue, Gallardo-Gonzalez

argues that the evidence is insufficient to support his conviction because Villalobos-Camara was not legally justified in using a dirty knife against him.

The jury heard sufficient evidence from which it could have rejected Gallardo-Gonzalez's claim of self-defense and convicted him of assault on a family member as a second offense. On appeal, Gallardo-Gonzalez does not challenge the proof that Villalobos-Camara is his wife and that he had previously been convicted of an assault involving family violence.

The evidence at trial supported a finding that Gallardo-Gonzalez intentionally, knowingly, or recklessly caused Villalobos-Camara's bodily injury. Villalobos-Camara testified that when she refused to go with him to a court hearing, he became irate, cursed her, threw objects at her, pulled her hair, punched her back and face, and hit her. Villalobos-Camara testified that while she had a knife in her hand, she swung her arms to push him away. She also said that when he finally left, she felt "like I couldn't breathe. I was breathing my own blood." She was later treated for her injuries at a hospital.

Villalobos-Camara also testified that Gallardo-Gonzalez had been physically abusive to her throughout their marriage and that whenever he was angry, he threatened to make a false report of child abuse. A narrative from her medical records, which was admitted at trial, corroborates her testimony:

> Met with patient . . . . She stated she was here as a result of her husband . . . physically assaulting her. She stated he called the police stating she

10

was assaulting him but she was not. She stated once police arrived they ended up arresting him. She stated he physically assaults her "all the time." She stated he was in jail earlier this Fall . . . for domestic violence but she chose to stay with him as he would threaten to call CPS and [have] . . . their children taken away from her.

Photographs of the room in which the assault occurred further corroborated Villalobos-Camara's testimony by showing the objects, including a toy car, that she said Gallardo-Gonzalez threw at her as well as blood on the floor. Photographs of Villalobos-Camara that were admitted at trial showed her badly beaten, swollen, and bruised face and blood on her hands and clothing. At trial Officer Lewis testified that Villalobos-Camara looked "like she's a victim of domestic abuse in my opinion." Photographs of Gallardo-Gonzalez showed that he was bandaged in two places where he had been stabbed.

Based on this evidence, a rational factfinder could have found beyond a reasonable doubt that Gallardo-Gonzalez intentionally, knowingly, or recklessly caused Villalobos-Camara bodily injury.

Gallardo-Gonzalez did not testify at trial, and he relies on testimony from Officer Lewis to nevertheless argue that the evidence that he acted in self-defense created a reasonable doubt about whether he acted in self-defense. We disagree.

Officer Lewis testified that he responded to a call about a "cutting" at the location. When he arrived, he saw that Gallardo-Gonzalez had been stabbed twice.

11

Gallardo-Gonzalez told Officer Lewis that his wife stabbed him at home. He initially said that he "never put his hands on her," and later said that he kicked her once. Officer Lewis then drove to the couple's apartment complex where he saw Villalobos-Camara and the room where the assault occurred.

Officer Lewis contacted the district attorney's office while still in the field, and the initial decision was made to refuse to charge anyone. Following departmental procedure, Officer Lewis contacted his supervisor, and together they met with Villalobos-Camara at the hospital. Officer Lewis's supervisor again contacted the district attorney's office, and the decision was made to charge Gallardo-Gonzalez.

Gallardo-Gonzalez's reliance on the preliminary charging decision is misplaced. The preliminary decision not to charge anyone is not evidence that he acted in self-defense because it is not probative of whether Gallardo-Gonzalez reasonably believed that it was necessary to punch, hit, and otherwise assault Villalobos-Camara to protect himself against her use of the knife in cutting or stabbing him. *See* TEX. PENAL CODE § 9.31(a); TEX. R. EVID. 401 (Test for Relevant Evidence).

Similarly, Gallardo-Gonzalez's reliance on Officer Lewis's testimony that his actions "could have been" in self-defense is also misplaced. Officer Lewis repeatedly testified that he was not present at the time of the assault and did not

witness it. His statement on cross-examination was no more than mere speculation. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."). Moreover, Officer Lewis's speculative testimony was not probative of whether Gallardo-Gonzalez reasonably believed that it was necessary to punch, hit, and otherwise assault Villalobos-Camara to protect himself against her use of the knife.

Gallardo-Gonzalez's second issue is that the jury erred by rejecting his self-defense claim when Villalobos-Camara used unlawful deadly force toward him. We disagree. Subject to certain inapplicable exceptions, a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE § 9.31(a). A person is not justified in assaulting another when the victim responds by defending herself with a deadly weapon. *See, e.g.*, *Callaway v. State*, 546 S.W.3d 899, 903 (Tex. App.—Amarillo 2018, pet. ref'd) (rejecting self-defense claim despite defendant's testimony stating that the victim "pulled" a gun on him and he just "reacted"); *McGee v. State*, 852 S.W.2d 551, 557 (Tex. App.—Tyler 1992, pet. ref'd) (rejecting self-defense claim despite conflicting evidence whether victim, who had a firearm, was lifting it when defendant shot him).

13

## Conclusion

We overrule both of Gallardo-Gonzalez's issues, and we affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish. *See* TEX. R. APP. P. 47.2(b).