

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00143-CR

_____

PEDRO EREVIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2021-422,218, Honorable William R. Eichman II, Presiding

April 6, 2023

MEMORANDUM OPINION

Before QUINN C.J., and DOSS and YARBROUGH, JJ.

Appellant, Pedro Erevia, appeals his murder conviction and presents four issues. Two concern the admission of photographic evidence. The remainder involve the accomplice witness instruction. We affirm.

*Background*

The murder for which appellant was convicted occurred over two decades earlier. He shot Steven Johnson in 1997. On the night of the murder, appellant rode as a passenger in a car being driven by Fabian Madrid. Richard Lara, an associate of

Madrid's, had loaned them the car. Earlier, another associate of Madrid's, Hector Ruiz, Jr., had loaned appellant a gun. As Madrid drove, the two occupants saw Johnson standing outside near the mother of his child. Madrid pulled up to Johnson, who apparently saw appellant with the gun. Johnson turned and attempted to run away. Appellant, sitting in the passenger seat of the car, pushed Madrid's head down, fired through the driver's side window, and struck Johnson in the back. Johnson died from the wound.

### *Issue One—Photograph of Johnson and Infant Son*

Through the first issue, appellant argues that the trial court erred in overruling his objections to the admission of two photographs, Exhibits 1 and 2. The former depicted Johnson standing, while the latter showed the decedent in a chair holding his infant son. Appellant purportedly sought to exclude them under Texas Rule of Evidence 401 (irrelevance) and 403 (undue prejudice). We overrule the issue for the following reasons.

Regarding the first exhibit, appellant actually told the court: "I don't have any objection to 1." Uttering no objection, he failed to preserve his complaint about its admission. TEX. R. APP. P. 33.1(a); *Darcy v. State*, 488 S.W.3d 235, 327 (Tex. Crim. App. 2016).

Regarding the second exhibit, he actually conceded, at trial, the picture's relevance when saying: "don't have any objection to it coming in for that limited purpose of showing that it's the shirt that he was wearing at the time of his death." Having conceded the picture's relevance under 401 "for that limited purpose," he again failed to preserve that aspect of his issue. TEX. R. APP. P. 33.1(a).

As for the supposed inadmissibility under 403, his argument consisted of saying: 1) "[t]hese victim impact photographs . . . remained in the courtroom accessible to the

2

jurors without any showing of a controversy about any certain piece of evidence," 2) "[c]olor photographs of a murder victim during life made especially potent (although more prejudicial than probative) the state's photographic evidence because they provided the jury with a firsthand impression that witness testimony could not," and 3) "[i]n a close case such as this one this sort of improper victim impact evidence may well have pushed one or more jurors over the line for a guilty verdict." Missing from his short narrative is substantive analysis explaining why the probative analysis of the evidence he acknowledged as relevant was *substantially* outweighed by the risk of improper impact. TEX. R. EVID. 403 (stating that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence). This is especially problematic in situations involving Rule 403 and the admission of pictures. Settled authority recognizes the myriad of indicia to be analyzed in such cases. *See e.g.*, *Callaway v. State*, 546 S.W.3d 899, 910 (Tex. App.—Amarillo 2018, pet. ref'd) (mentioning seven indicia); *see also Pugh v. State*, 639 S.W.3d 72, 86-91 (Tex. Crim. App. 2022) (describing the factors subject to analysis). Appellant addressed a bare minimum of them and only in a most cursory way. Nor did he say anything of the general rule holding that photographs are admissible if verbal testimony about the matters depicted are admissible. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). Thus, he inadequately briefed the issue and, therefore, waived the complaint. *Lozano v. State*, No. 04-16-00838-CR, 2018 Tex. App. LEXIS 4467, at *8 (Tex. App.—San Antonio June 20, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant waived his Rule 403 complaint by failing to include substantive analysis applying the Rule to the

3

facts of the case and explain why it require the exclusion of the evidence); *accord, Pham v. State Farm Lloyds*, No. 07-17-00366-CV, 2018 Tex. App. LEXIS 8605, at *6 (Tex. App.—Amarillo Oct. 22, 2018, no pet.) (mem. op.) (holding the same viz appellant's Rule 403 contention).

### *Issue Two—Autopsy Photographs*

Next, appellant contends the trial court committed harmful error when it admitted, over his objections, a set of three autopsy photographs that showed internal organs with a rod depicting the trajectory of the bullet. Appellant argues these photographs were gruesome and unnecessary in light of other crime scene evidence and the issue at trial being the identity of the shooter, not the cause of death. We overrule the issue.

As previously said, photographs are admissible if verbal testimony about the matters depicted are admissible. Furthermore, autopsy photos may serve to show the manner and means of death, thereby aiding the jury's understanding of the circumstances of death. *Cisneros v. State*, No. 07-13-00299-CR, 2015 Tex. App. LEXIS 6248, at *11 (Tex. App.—Amarillo June 18, 2015, no pet.) (mem. op., not designated for publication). Autopsy photographs are generally admissible "unless they depict mutilation of the victim caused by the autopsy itself." *Davis v. State*, 313 S.W.3d 317, 331 (Tex. Crim. App. 2010). A trial court does not err simply because it admits into evidence photographs that are gruesome. *Cisneros*, 2015 Tex. App. LEXIS 6248, at *11-12. That said, we turn to the record at hand.

The three photographs of which appellant complains (i.e., State's Exhibits 51, 52, and 53) are color pictures of internal organs removed from Johnson. A rod was placed through them. According to the State, "[t]he photographs were probative in showing the trajectory of the bullet and corroborating witness testimony that [a]ppellant shot Johnson

in the back from a seated position . . . ." Yet, it is difficult to see how those pictures serve that purpose. Nothing in them shows how the viscera depicted was oriented within Johnson's body. Instead, the viewer merely sees a multi-colored mass pierced with a rod atop a flat surface. And, that Johnson died of a bullet entering his back and exiting his front seemed rather undisputed. The primary topic of debate consisted of who inflicted the wound, as opposed to the bullet's trajectory. Consequently, the images liken more to mutilation resulting from the autopsy within the category mentioned in *Davis.*

But, the three images were not the only autopsy pictures admitted into evidence. The State presented eleven more to the jury. They included 1) torso images wherein entry and exit holes can be seen, 2) close-ups of Johnson's head, face, and mouth, and 3) close-ups of the wounds themselves. Appellant does not complain of them, and they are no less gruesome than the viscera within exhibits 51-53. Indeed, one could reasonably argue the former are more emotive since they show a dead human being as opposed to a non-descript mass. To that, we add both the relatively little time spent by the State in developing and discussing the three exhibits as well as the plentiful evidence identifying appellant as the shooter. Given these circumstances, we cannot say that the exhibits harmed appellant even if admitted improperly.

### Issues Three and Four—Jury Instructions

Appellant's third and fourth issues reflect a verse from a famous decades-old song: "Oh no, I've said too much, I haven't said enough."[1] Both deal with the same accomplice witness instruction in the jury charge. Under three, appellant suggests that the court had

---

[1] "Losing My Religion," by R.E.M.

to say more, while through four he believed it said too much. We address the fourth issue, then the third. And, upon so proceeding, we will overrule each.

The trial court said too much in the accomplice witness instruction because, according to appellant, it "unlawfully commented on the weight of the evidence, undermined the presumption of innocence and implied that Mr. Erevia was guilty as charged." And it allegedly so commented, undermined, and implied when it "perhaps inadvertently, but without limitation or qualification, [indicated] that the defendant was guilty of all elements of the murder because the court expressly deemed the defendant to have Fabian Madrid as an *accomplice as a matter of law* as that term was defined in the court's charge." (Emphasis in original). In other words, the trial court informing the jury that Madrid was an accomplice as a matter of law did two things. First, it purportedly revealed the court's belief that Madrid was guilty of the murder. And, in saying Madrid was an accomplice as a matter of law with appellant, the court secondly imputed that same guilt to appellant. We find the argument rests on an unsound foundation.

First, aspects of that defective foundation include questionable interpretations of the law. For instance, appellant insinuates that the trial court need not submit an instruction where a witness is deemed an accomplice as a matter of law. While the words of article 38.14 of the Texas Code of Criminal Procedure do not expressly mandate the instruction, our Court of Criminal Appeals does. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (so mandating); *Bethel v. State*, No. 07-21-00297-CR, 2023 Tex. App. LEXIS 1490, at *15 (Tex. App.—Amarillo March 8, 2023, no pet. h.) (pending publication) (acknowledging the requirement). As for his representation that the charge need not incorporate the word "accomplice," we, unlike him, cannot ignore precedent. Simply put, the instruction "must . . . explain the definition of an accomplice." *Zamora v.*

6

*State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013).  How a trial court can "explain the definition of an accomplice" without using the word "accomplice" leaves us puzzled.

That said, we further observe the absence of anything in the instruction at bar which indicates either 1) Madrid's purported guilt for the murder or 2) Madrid's purported status as an accomplice with appellant.  As to the former, the charge characterized Madrid as an accomplice as a matter of law, but it did so with the caveat "if it [i.e., the murder] was committed."  So conditioning the instruction meant that the jury had to first find the commission of a murder before Madrid could be considered an accomplice to it.  The court did not find (implicitly or otherwise) that a murder happened.  As to the latter, nothing was said about **being appellant's accomplice**.  Rather, reference was made to being an **accomplice to the murder**, if the murder happened.  That left the jury free to accept Madrid's admission to participating in Johnson's murder while finding appellant innocent of the crime because no other evidence connected him to it.[2]

In short, appellant took liberties with both controlling authority and the words actually said in the charge to conclude that the trial court said too much.  We do not have that luxury and, therefore, reject the substance of his fourth issue.

That leaves issue three.  Through it, appellant argues that the trial court failed to say enough because it omitted an instruction warning the jury against accepting an accomplice's credibility.  The testimony of an accomplice is inherently suspect, in his view, and his notions of constitutional due process require the jury to be told that.

---

[2] The instruction included the directive that 1) "[t]he defendant, Pedro Erevia, therefore cannot be convicted on the testimony of Fabian Madrid unless that testimony is corroborated" and 2) "[e]vidence is sufficient to corroborate the testimony of an accomplice if that evidence tends to connect the defendant, Pedro Erevia, with the commission of any offense that may have been committed."

We rejected the virtually identical argument in *Bethel*. *Bethel*, 2023 Tex. App. LEXIS 1490, at *17-19. To reiterate, "[a]ppellant's desired instruction is at odds with article 36.14 of the Texas Code of Criminal Procedure, which provides that the court's charge should not express any opinion as to the weight of the evidence." *Id.* at 2023 Tex. App. LEXIS 1490, at *19. To that we add the following.

As appellant notes, our United States Supreme Court has voiced concern about the veracity of informants. *See e.g.*, *Banks v. Dretke*, 540 U.S. 668, 701 (2004) (quoting *Lee v. United States*, 343 U.S. 747, 757 (1952) (stating that "[t]his Court has long recognized the 'serious questions of credibility' informers pose")). The highest criminal court in Texas voiced similar concerns about the credibility of accomplices. For instance, it said in *Zamora* that the requirement of corroboration reflects "'a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'" *See Zamora*, 411 S.W.3d at 509. Despite the concerns uttered by both the highest court in the United States and the highest criminal court in Texas, we find it interesting that neither require the type of instruction sought by appellant. Moreover, the instruction about the necessity for corroborative evidence implicitly addresses the supposed propensity of informants or accomplices to be less than truthful. It also leaves jurors free to exercise their collective common sense about a witness's credibility independent from nudging by the court.

Additionally, if an accomplice was prone to lie, as appellant suggests, then why would not a testifying defendant have the same propensity? The cynic would suggest that both have reason to testify in a way favoring self-interest, irrespective of the truth. Thus, if we were to accept appellant's argument here, would we next be asked by the

8

State to submit a similar instruction regarding the credibility of a defendant's testimony? That is a box we dare not approach.

Consequently, we again eschew the opportunity to lead the trial court to the precipice of undue comment on the weight of the evidence. We eschew the invitation to impose a further instruction akin to "you probably shouldn't believe accomplices because they are guided by self-interest and may lie to help themselves."[3] The current instruction about the need for corroborative evidence suffices until our high courts say otherwise.

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice


Doss, J., concurring in the result.


Do not publish.

---

[3] We find it ironic that in other settings, the inculpation of oneself serves as an indicia of reliability and truthfulness. *See Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008) (stating that the hearsay exception for statements against pecuniary, penal, or social interest stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true and a reasonable person would not normally claim that he committed a crime, unless it were true). To be an accomplice, one must necessarily intertwine himself into the criminal activity and risk condemnation if not prosecution. Thus, his inculpating himself may also be viewed as a sign of veracity. Odd, is it not?